THE NATIONAL SAFE DEPOSIT COMPANY, Appellant, *vs.*
WILLIAM H. STEAD, Attorney General, *et al.* Appellees.

*Opinion filed June 20, 1911—Rehearing denied October 4, 1911.*

1. BAILMENTS—*relation between a safety deposit company and
lessee is that of bailee and bailor.* Where a safety deposit com-
pany leases a deposit box or safe and the lessee takes possession
thereof and places his property therein the relation of bailee and
bailor is created, and the fact that the company does not, and is
not expected to, know the character and description of the prop-
erty deposited does not change that relation, and the law applicable
to bailments, generally, applies to the transaction and the property.

2. SAME—*duty of a safety deposit company to deliver property
upon death of lessee.* Upon the death of the lessee of a safety de-
posit box or safe the contents of such box or safe are in the pos-
session and control of the lessor company, and the common duty
of a bailee rests upon it to deliver the property to the party or
parties upon whom the law casts the title, with right of possession.

3. INHERITANCE TAX—*the right to succeed to property is purely
statutory.* The right to take property, either real or personal, by
inheritance or by bequest or devise is a purely statutory right and
one which rests wholly within legislative enactment, and the State,
acting in its sovereign capacity, may by appropriate legislation con-
trol the devolution of property after the death of the owner.

4. SAME—*inheritance tax is a tax upon the right of succession.*
An inheritance tax is a tax upon the right to succeed to property
upon the death of the owner and is not a tax upon property itself.

5. SAME—*the State has a vested financial right in estate of de-
cedent.* The State has a vested financial right in the estate of
every decedent in this State which is subject to the payment of an
inheritance tax, and such right is equal in degree to that of the
personal representative, the heir or devisee of the decedent, and it
vests at the same time that the interest of the personal represen-
tative, heir or devisee vests.

6. SAME—*State has right to know what property is in a safety
deposit box of deceased lessee.* Where a lessee of a safety deposit
box or safe dies leaving property therein, the State, by its proper
representative, has the right to be advised as to the amount and
character of the property and of the time it will be surrendered by
the safety deposit company to the personal representative, heir or
devisee of the decedent, in order that it may know whether the
succession to such property is subject to an inheritance tax.

7. SAME—*provision of section 9 of Inheritance Tax law requiring notice to State is valid.* The provision of section 9 of the Inheritance Tax law which requires the representative of the State to be given notice of the time when property in the safety deposit box or safe of a deceased lessee is to be delivered by the safety deposit company to the personal representative, heir or devisee of the decedent is not an unreasonable measure to protect the State from loss of property in which it has a vested right, nor does it deprive the company, personal representative, heir or devisee of any constitutional right.

8. SAME—*provisions of section 9 making a safety deposit company liable if it violates the law are not invalid.* The provisions of section 9 of the Inheritance Tax law making a safety deposit company liable for any inheritance tax upon the right of succession to property in the box or safe of a deceased lessee which it delivers to the personal representative, heir or devisee of the decedent without observing the provisions of the law designed to protect the interest of the State, and which authorize the imposition of a penalty upon the company, are not invalid, as the courts may be resorted to if there is any doubt as to the liability of an estate to the tax.

9. SAME—*section 9 of Inheritance Tax law is valid in so far as it concerns sole lessees.* Section 9 of the Inheritance Tax law of 1909 (Hurd's Stat. 1909, p. 1897,) is a valid enactment, so far as it applies to property of a sole lessee who has died leaving his property in the safety deposit box or safe in the possession and control of the safety deposit company from which he has rented the box or safe.

10. SAME—*section 9 of the Inheritance Tax law is not invalid where there are joint lessees.* Section 9 of the Inheritance Tax law of 1909 is not unconstitutional when applied to property of a deceased lessee in a safety deposit box or safe rented by him and other persons jointly, whether the property of such joint lessees has been kept separate by its respective owners or whether the property of the joint lessees has been commingled or is jointly owned by them.

11. SAME—*section 9 of Inheritance Tax law is not invalid as applied to partnership property.* Section 9 of the Inheritance Tax law of 1909 is not unconstitutional when applied to a case where a safety deposit box or safe has been rented by a co-partnership and one member has died leaving partnership property in the box or safe, as the death of the partner works a dissolution of the firm and the inheritance tax due the State will be assessed only upon the succession to what is due the deceased partner's estate after the partnership debts are paid.

12. SAME—*section 9 of Inheritance Tax law does not infringe upon charter rights of safety deposit company.* Section 9 of the Inheritance Tax law of 1909, which, in effect, only requires that safety deposit companies shall not deliver the property of deceased lessees to their personal representatives, heirs or devisees without notice to the State, or, if subject to an inheritance tax, without retaining enough of the property to pay the tax, does not infringe upon the charter rights of such safety deposit companies.

13. SAME—*section 9 of Inheritance Tax law does not deprive safety deposit companies of property without due process of law.* In view of the fact that the relation between a safety deposit company and its lessee is that of bailee and bailor, and that the State must be regarded as having a vested financial interest in the lessee's deposit, after his death, in case the right to succeed thereto is subject to an inheritance tax, section 9 of the Inheritance Tax law of 1909 cannot be said to deprive safety deposit companies of property without due process of law or to make them trustees or tax-gathering agents for the State without their consent.

14. SAME—*section 9 does not subject the property of lessees of safety deposit companies to unreasonable searches and seizures.* Section 9 of the Inheritance Tax law of 1909, in requiring notice to the representative of the State in order that he may be present when the contents of a safety deposit box or safe of a deceased lessee are surrendered to his personal representative, heir or devisee, is not invalid, as subjecting the property of the lessee to unreasonable searches and seizures.

15. SAME—*section 9 does not take property of deposit company and lessee without compensation.* The leases of a safety deposit company of its boxes or safes, and the rent therefor, must be regarded as contemplating the contingency that there may be some delay after the death of a lessee in delivering the property to those entitled thereto, and the holding of the property by the safety deposit company while carrying out the provisions of the Inheritance Tax law is not, therefore, the devoting of property of the company and its lessees to public use without just compensation.

FARMER, VICKERS and COOKE, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

This was a bill in chancery filed by the National Safe Deposit Company, the appellant, against William H. Stead, Attorney General, Andrew Russel, State Treasurer, and

Walter K. Lincoln, inheritance tax attorney, the appellees, in the circuit court of Cook county, to restrain said officers from enforcing against the appellant, and all other corporations, firms and individuals similarly situated and who are engaged in the business of renting safety deposit boxes and safes for hire, the provisions of section 9 of an act entitled "An act to tax gifts, legacies, inheritances, transfers, appointments and interests in certain cases and to provide for the collection of the same, and repealing certain acts therein named," approved June 14, 1909, in force July 1, 1909, (Hurd's Stat. 1909, p. 1897,) on the ground that said section of the act is unconstitutional and void. A general demurrer was interposed to the bill and sustained and the bill was dismissed for want of equity, and the record has been brought to this court by the complainant by appeal, for further review.

Section 9 reads as follows: "If a foreign executor, administrator or trustee shall assign or transfer any stock or obligations in this State standing in the name of a decedent or in trust for a decedent, liable to any such tax, the tax shall be paid to the treasurer of the proper county on the transfer thereof. No safe deposit company, trust company, corporation, bank or other institution, person or persons having in possession or under control securities, deposits, or other assets belonging to or standing in the name of a decedent who was a resident or non-resident or belonging to, or standing in the joint names of such a decedent and one or more persons, including the shares of the capital stock of, or other interests in, the safe deposit company, trust company, corporation, bank or other institution making the delivery or transfer herein provided, shall deliver or transfer the same to the executors, administrators or legal representatives of said decedent, or to the survivor or survivors when held in the joint names of a decedent and one or more persons, or upon their order or request, unless notice of the time and place of such intended delivery or

transfer be served upon the State Treasurer and Attorney
General at least ten days prior to said delivery or transfer;
nor shall any such safe deposit company, trust company,
corporation, bank or other institution, person or persons
deliver or transfer any securities, deposits or other assets
belonging to or standing in the name of a decedent, or be-
longing to, or standing in the joint names of a decedent
and one or more persons, including the shares of the capi-
tal stock of, or other interests in, the safe deposit company,
trust company, corporation, bank or other institution mak-
ing the delivery or transfer, without retaining a sufficient
portion or amount thereof to pay any tax or interest which
may thereafter be assessed on account of the delivery or
transfer of such securities, deposits or other assets, includ-
ing the shares of the capital stock of, or other interests in,
the safe deposit company, trust company, corporation, bank
or other institution making the delivery or transfer, under
the provisions of this article, unless the State Treasurer
and Attorney General consent thereto in writing. And it
shall be lawful for the State Treasurer, together with the
Attorney General, personally or by representatives, to ex-
amine said securities, deposits or assets at the time of such
delivery or transfer. Failure to serve such notice or fail-
ure to allow such examination, or failure to retain a suffi-
cient portion or amount to pay such tax and interest as
herein provided shall render said safe deposit company,
trust company, corporation, bank or other institution, per-
son or persons liable to the payment of the amount of the
tax and interest due or thereafter to become due upon said
securities, deposits or other assets, including the shares of
the capital stock of, or other interests in, the safe deposit
company, trust company, corporation, bank or other in-
stitution making the delivery or transfer, and in addition
thereto, a penalty of one thousand dollars; and the pay-
ment of such tax and interest thereon, or of the penalty
above described, or both, may be enforced in an action

brought by the State Treasurer in any court of competent jurisdiction."

The sole object in filing this bill was to test the constitutionality of said section 9 of the Inheritance Tax law of 1909. The allegations of the bill are, in substance, as follows: That appellant was in 1881 incorporated under the laws of this State for the express purpose of providing a suitable building or buildings with vaults and safes, with a special regard to protection against loss by fire, robbery or otherwise, and to carry on the business of safety deposit and storage, and has ever since been engaged in carrying out such purposes; that it has succeeded in building up a large and profitable business, consisting chiefly of renting for hire safe deposit boxes or safes specially constructed for that purpose in its vaults for the safe keeping of money, securities and valuables, one provision in the contract between appellant and each box renter being that no one except the renter or his deputy, to be designated in writing on the books of the company, or, in case of death, his legal representatives, shall have access to the box or safe; that appellant now has in its vaults 13,291 safes or safe deposit boxes, of which 9702 are under contracts of rental; that of the latter number, 4104 are rented to and held jointly by more than one individual, each of whom has access to the box of which he is a joint renter and the right to keep property therein, and 316 are rented to and held by business co-partnerships, and that the demand for joint rentals is constantly increasing. The bill further alleged that in the ordinary course of business the safes and boxes can be opened only by the use of two keys, one of which is held by the lessee and the other by appellant, and that it requires the joint act of the customer and appellant to secure access to the contents of a box or safe; that appellant retains no means of access to the box or safe by itself, alone, nor does it possess any knowledge or information, or means of knowledge or information, as to the own-

ership of the contents of the box or safe; that the appellant never by its own act opens a box or safe rented to a customer unless the lessee loses his key or abandons the box or safe; that in case of the loss of the key, appellant, in the presence of the lessee, drills out the lock on the safe or box and replaces it with a new lock and key, and in case of the abandonment of a box or safe by a renter, evidenced by his failure to renew the lease or pay the rent, appellant by the contract of leasing reserves, and sometimes exercises, the right, after reasonable notice to the lessee to withdraw the contents of the box and surrender the key, to open the box by drilling out the lock, to withdraw the contents and hold them subject to the order and disposition of the renter. The bill further alleged that upon the death of the lessee of a box or safe, and before letters of administration have been issued, appellant permits the next of kin having the key to open the box, in the presence of appellant's agents, for the purpose, only, of ascertaining whether decedent has left a will in the box, which, if found, is deposited in the probate court by appellant, and in some instances where the next of kin have represented that they could not find the key to the box the lock has been drilled out and changed, at their request and in their presence, in order to look for such will, but in neither case does appellant permit the removal of anything other than the will from the box. The bill further alleged that appellees claim that under the provisions of section 9 of the Inheritance Tax law of 1909 they have the right to compel appellant and similar institutions to deny to the personal representatives of deceased box renters, and to the survivor or survivors of joint box renters, and to surviving partners of co-partnership box renters, control over and liberty to remove the contents of the safe deposit boxes, or any part thereof, unless notice of the time and place of the intended removal is served upon the State Treasurer and Attorney General at least ten days prior to such removal, and unless

the State Treasurer and Attorney General consent, in writing, to such removal, or a sufficient portion or amount of such contents be retained by appellant to pay any tax and interest which may thereafter be assessed, on account of the taking possession of the contents of such box by the personal representatives of the decedent, or by the survivor or survivors among joint box holders, or by the surviving partners of the decedent if the box was held in the name of a co-partnership; that appellees also claim the right to examine the contents of any such safe deposit box at the time of the removal or taking possession of the contents by the person legally entitled thereto; all of which claims appellant insists are in conflict with the terms and obligations imposed upon it by its contracts with box renters and with the constitutional rights of box renters and their legal representatives, and especially with the constitutional rights of surviving joint or partnership box renters, as said section 9 is in violation of section 10 of article 1 of the constitution of the United States, and of article 4 and of section 1 of article 14 of the amendments to the constitution of the United States, and is also in violation of sections 2, 6, 13 and 14 of article 2 of the constitution of this State, and is therefore, in the particulars above set forth, unconstitutional and void. The bill also contains allegations intended to show the jurisdiction of a court of equity to take cognizance of the matter in order to prevent multiplicity of suits and to prevent irreparable injury to appellant's business.

It is contended by the appellant that its constitutional rights, both State and Federal, are infringed upon by said section of the statute in the following particulars: (1) That it impairs the obligations of its charter; (2) that it deprives it of liberty and property without due process of law; and (3) that it deprives it of the due protection of the law. It is also insisted that its lessees, in addition to being deprived of liberty, property and the equal protection of the law, have (1) their property subjected to unreason-

able searches and seizures, and (2) that their property is devoted to a public use without just compensation. And it is further urged that it is (1) forced to become a trustee and to perform the duties of a trustee without its consent, and that it is (2) required to perform the duties of a tax-assessing and tax-collecting officer without its consent.

GEORGE PACKARD, VINCENT J. WALSH, and JOHN J. PECKHAM, (ORVILLE PECKHAM, of counsel,) for appellant.

W. H. STEAD, Attorney General, and WALTER K. LINCOLN, (CHARLES E. WOODWARD, of counsel,) for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

The right of appellant to maintain this bill has not been challenged by the appellees, and it will therefore be assumed, without argument, for the purpose of this appeal, that the allegations of the bill are sufficient to show that a property right of the appellant was involved in the court below and that the bill could be maintained to avoid a multiplicity of suits. *Craft* v. *Indiana, Decatur and Western Railway Co.* 166 Ill. 580; *Cragg* v. *Levinson,* 238 id. 69; *Pelton* v. *National Bank,* 101 U. S. 143; *Cummings* v. *National Bank,* id. 153; *Hills* v. *Exchange Bank,* 105 id. 319; *Union Pacific Railway Co.* v. *Ryan,* 113 id. 526.

The counsel for the appellant and the counsel for the State differ widely and fundamentally upon the relation which the appellant sustains towards its lessees, and the property which its lessees place in the safety deposit boxes and safes which they rent from the appellant, and as to the interest of the State in the property situated in a safety deposit box or safe, placed there by a lessee, upon the death of the lessee, when the property is subject to the payment of an inheritance tax. We think, for the proper decision of this case, the exact relation which the appellant sustains

to a person to whom it rents a safety deposit box or safe, and the property placed in such box or safe by the lessee, and the interest which the State has in the property of a lessee remaining in such safety deposit box or safe upon his death, if such property is subject to an inheritance tax, must necessarily be determined as a preliminary question, as, according to our view, the correct determination of those questions will simplify many of the questions discussed in the briefs and eliminate others, and place the case in such a situation that a rational solution of the question here involved, whose determination is vital to a correct decision of this case, may readily be determined.

We think it clear that where a safety deposit company leases a safety deposit box or safe, and the lessee takes possession of the box or safe and places therein his securities or other valuables, the relation of bailee and bailor is created between the parties to the transaction as to such securities or other valuables, and that the fact that the safety deposit company does not know, and that it is not expected it shall know, the character or description of the property which is deposited in such safety deposit box or safe does not change that relation, any more than the relation of a bailee who should receive for safe keeping a trunk from a bailor would be changed by reason of the fact that the trunk was locked and the key retained by the bailor, although the obligation resting upon the bailee with reference to the care he should bestow upon the property in the trunk might depend upon his knowledge of the contents of the trunk. Obviously, the bailee would be in possession of the trunk and its contents, and no amount of argument would demonstrate that while the trunk was in possession of the bailee its contents were in the possession of the bailor, solely by reason of the fact that the bailor of the trunk retained the key and the bailee did not have access to the trunk. We are of the opinion that the relation of bailee and bailor exists between the appellant and its

lessees, and that the deposit of the securities and valuables by its lessees in rented safety deposit boxes or safes is a bailment, and that the law applicable to bailments, generally, applies to such transaction and to such property.

In *Mayer* v. *Brensinger,* 180 Ill. 110, the appellee rented from the appellant a safety deposit box in his safety deposit vault, in which he deposited cash. During the illness of the appellee the cash was removed from the box, and suit was brought and a recovery was had. In that case, as in this, the appellee retained the key to the box. The court, on page 113, said: "The relation which the appellant bore to the appellee was that of a bailee or depositary for hire. As such bailee or depositary for hire the appellant was bound to exercise ordinary care and diligence in the preservation of the property entrusted to him by the appellee. Ordinary care in such cases is such care as every prudent man takes of his own goods, and ordinary diligence in the preservation of such goods is such diligence as men of common prudence usually exercise about their own affairs. (*Chicago and Alton Railroad Co.* v. *Scott,* 42 Ill. 132.) Although one who hires a box in the vaults of a safety deposit company may keep the key himself, yet the company, without any special contract to that effect, will be held to at least ordinary care in keeping the deposit."

In the case of *Lockwood* v. *Manhattan Storage and Warehouse Co.* 50 N. Y. Supp. 974, it appeared that the defendant, among other things, maintained at its warehouse safe deposit vaults, containing separate safe deposit boxes or safes. Plaintiff had, for a consideration paid, rented a safe deposit box of defendant. One key to the box was held by the plaintiff and one by the defendant. Access to the box could be gained only by the use of said two keys. The plaintiff deposited in her box certain sums of money, which, when she returned some days later, she found had disappeared. Suit was brought to recover the value of

the property abstracted. That defendant was not in the possession of plaintiff's property was urged upon the court. In disposing of the case the court said: "It is urged upon the part of the defendant that it was not the bailee because it was not in possession of the plaintiff's property. If it was not, it is difficult to know who was. Certainly the plaintiff was not, because she could not obtain access to the property without the consent and active participation of the defendant. She could not go into her safe unless the defendant used its key first and then allowed her to open the box with her own key, thus absolutely controlling the access of the plaintiff to that which she had deposited within the safe. The vault was the defendant's and was in its custody, and its contents were under the same conditions. As well might it be said that a warehouseman was not in possession of silks in boxes deposited with him as warehouseman because the boxes were nailed up and he had no access to them." See, also, *Cussen* v. *South California Savings Bank,* 133 Cal. 534; *Roberts* v. *Safe Deposit Co.* 123 N. Y. 57; *Safe Deposit Co.* v. *Pollock,* 85 Pa. St. 391.

We think the above authorities clearly sustain the position that the appellant, in law, is in possession of the property of its lessees deposited in the safety deposit boxes or safes which it rents to them, and while it may not have knowledge of the character, amount or quantity of the property which its lessees have deposited in the safety deposit boxes or safes leased from it, nevertheless it is in the legal custody and control of such property. True, while a lessee is living, by the terms of the lease with the appellant he has access to the box or safe, and upon his death the duty devolves upon the appellant to hold the contents of his box or safe and to deliver them to those persons, only, to whom they belong or to whom the law directs they shall be delivered, and such delivery must be made at the appellant's peril. We conclude, therefore, upon the death of a

lessee of a safety deposit box or safe the contents of such box or safe are in the possession and control of the appellant, and the same duty rests upon it as rests upon every other bailee who finds himself in the possession of property that belongs to a bailor who has died during the existence of the bailment,—that is, to deliver the bailment to the party or parties upon whom the law casts the title, with the right of possession. The law is also well settled that the right to take property, either real or personal, by inheritance or by bequest or devise is purely a statutory right and one which rests wholly within legislative enactment, and the State, acting in its sovereign capacity, by appropriate legislation may regulate and control the devolution of property after the death of the owner. (*Evans* v. *Price,* 118 Ill. 593; *Wunderle* v. *Wunderle,* 144 id. 40; *Kochersperger* v. *Drake,* 167 id. 122; *Billings* v. *People,* 189 id. 472; *In re Estate of Speed,* 216 id. 23; *In re Petition of Mulford,* 217 id. 242; *In re Estate of Graves,* 242 id. 212.) In the *Kochersperger case,* on page 125, the court said: "The laws of descent and the right to devise and take under a will within the State of Illinois owe their existence to the statute law of the State. The right to inherit and the right to devise being dependent on legislative acts, there is nothing in the constitution of this State which prohibits a change of the law with reference to those subjects at the discretion of the law-making power. The laws of descent and devise being the creation of the statute law, the power which creates may regulate and may impose conditions or burdens on a right of succession to the ownership of property to which there has ceased to be an owner because of death, and the ownership of which the State then provides for by the law of descent or devise." And in the *Graves case,* on page 216, it was said: "The descent of property in this State, whether by inheritance or devise, is regulated entirely by statutory provisions."

It has been decided by this court that an inheritance tax is a tax upon the right of succession and is not a tax upon the property itself. (*Kochersperger* v. *Drake, supra; Estate of Merrifield* v. *People,* 212 Ill. 400.) It is obvious that the money received by the State in the form of inheritance taxes constitutes a part of the public revenue of the State, and by numerous adjudicated cases it has been determined that the right of the State to such taxes is a vested right, and that such right vests, in point of time, at the time the estate vests,—that is, upon the death of the decedent. (*In re Estate of Graves, supra.*) The State, therefore, has a vested financial right in the estate of every decedent in this State which is subject to the payment of an inheritance tax, and that right is equal in degree to that of the personal representative, the heir or devisee of the decedent, and it vests at the same moment of time that the interest of the personal representative, heir or devisee vests. In the *Graves case,* on page 216, this court said: "All the property owned by any person at his decease passes either under the Statute of Descent, to the persons mentioned in that statute, or under the Statute of Wills, to his devisees. In either event it passes subject to the indebtedness of the decedent and the expenses of administration, and to no other charges. The Inheritance Tax law provides that all property so descending, whether under the Statute of Wills or the Statute of Descent, shall be subject to a tax, at certain specified rates, at the fair market value thereof, which shall be due at the death of the decedent. The tax is not upon the estate of the decedent but upon the right of succession, and it accrues at the same time the estate vests,— that is, upon the death of the decedent. Questions may arise as to the persons in whom the title vests, and such questions may affect the amount of the tax and the person whose estate shall be chargeable with it; but when those questions are finally determined their determination relates to the time of the decedent's death. No changes of title,

transfers or agreements of those who succeed to the estate, among themselves or with strangers, can affect the tax. All questions concerning it must be determined as of the date of the decedent's death."

In *Matter of the Estate of Stanford,* 126 Cal. 112, the court had under consideration a statute of the State of California which, in part and in effect, surrendered to the beneficiary all the tax which had accrued in certain cases under a prior law. The constitution of California prohibited the legislature from releasing or extinguishing, in whole or in part, the indebtedness, liability or obligations of any corporation or person to the State. As to estates which had become subject to the tax under the prior law but in which the tax had not been paid, the court held that the amendatory act under consideration was invalid, as infringing the constitutional provision above referred to. The court placed its holding upon the ground that the State, upon the death of the decedent, acquired a vested interest in the tax due the State. Upon that point the court said: "This being so, and the legislature in this case having determined that ninety-five per cent of the decedent's estate may go to his heirs and beneficiaries and that five per cent be retained to the State, it is too clear for argument that this five per cent vested in the State at the same time that the ninety-five per cent vested in the heirs or other beneficiaries. 'An estate is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment.' (Kent's Com. 202.) The State here, from the death of the decedent, has a present fixed right of future enjoyment to the five per cent of his estate. This is property or a thing of value belonging to the State."

It is clear, therefore, that the State has an interest in every estate that is subject to the payment of an inheritance tax, and in all such proceedings the Attorney General, or some other designated officer, is the representative of the

State. (*People* v. *Sholem*, 238 Ill. 203.) We think, there-
fore, that the conclusion, from what has been said, log-
ically and necessarily follows that where a lessee of the
appellant dies leaving property in one of the safety deposit
boxes or safes of the appellant, the State, by its proper
representative, has the right to be advised whether or not
it shall ultimately be established that it has an interest in
such property and of the time when the property will be
surrendered and delivered by the appellant to the personal
representative, heir or devisee of the decedent, for the pur-
pose of becoming informed as to whether the succession
to such property is subject to an inheritance tax. If such
were not held to be the law, all moneys, securities or other
valuables held by appellant in its safety deposit boxes or
safes for its lessees, upon the death of a lessee might be
transferred to parties other than the State or its repre-
sentatives and immediately removed to a foreign State or
country or concealed or otherwise disposed of, and the true
owner of the property, in part,—that is, the State,—be de-
prived of all right to enjoy the use and possession of such
property. It therefore legitimately follows, we think, that
the provisions of section 9 which require the representative
of the State to have notice of the time when property held
by safety deposit companies, the former owners of which
are deceased, is to be surrendered and removed from the
custody of the safety deposit company and delivered to
the personal representative, heir or devisee of the decedent,
are not an unreasonable measure to protect the State from
loss of property in which it has a vested right. Neither do
we think, as will hereafter be shown, that the appellant or
the personal representative, the heir or the legatee of the
decedent is deprived of any constitutional right by requir-
ing that the representative of the State be given notice of
such surrender and delivery. Nor can we see that the ap-
pellant will be deprived of any of its constitutional rights
by making it liable for the amount of the inheritance tax

in case it violates the clear mandate of the law and parts with the possession of such property without giving notice to the State of such removal and delivery, or in being penalized for so doing. It is obvious, should doubts arise as to whether an inheritance tax is due on the succession of property held by a safety deposit company whose former owner is dead, or as to the amount of such tax, the courts will always be open, upon the application of the safety deposit company, the State or those interested, to adjudicate upon such questions as may arise and solve the doubt, so that the appellant's expressed fear that it might be wrongfully required to pay an inheritance tax upon property which it had supposedly properly surrendered and delivered, or be penalized for the infraction of the statute and mulcted in costs, is, we think, a groundless fear.

From what has been decided, 'it follows that it is our view that section 9 of the act of 1909 is a valid enactment so far as it covers property held by a safety deposit company and which had been deposited in a safety deposit box or safe, in a case where the sole lessee of such safety deposit box or safe had died leaving his property in a safety deposit box or safe and in the custody of and under the control of the appellant, it being our view that in consideration of such enactment the appellant has no more right, under the constitution, either State or national, to ignore the property rights of the State and to surrender and deliver property thus situated by turning it over to the personal representative, heir or devisee of the decedent, than it would have to deliver the same to the State to the entire exclusion of the rights of the personal representative, heir or devisee of the deceased. All the parties in interest for whom the appellant, as a safety deposit company, holds property thus situated, are under the law entitled to be informed of the condition and amount of such property so found in safety deposit boxes or safes, before the appellant parts with the possession thereof. This would be the

law which would govern any other bailee under like circumstances if the statute had not been enacted, and we think no valid reason is or can be assigned why such should not be held to be the law in view of said statute governing safety deposit companies.

It is contended by the appellant that even though the constitutionality of section 9 of the act of 1909 should be sustained when applied to property found in a safety deposit box or safe where the sole lessee of such receptacle is dead, it is clearly unconstitutional when applied to property found in a safety deposit box or safe where there are joint lessees and one of the lessees is dead, even though the lessees were not jointly interested in the contents of such safety deposit box or safe and the property was not commingled in the safety deposit box or safe; that the enforcement of the statute would be far more objectionable, on constitutional grounds, where one of two or more lessees was deceased and the property found in a safety deposit box or a safe was owned jointly by the lessees, or where the lease was made by a co-partnership and the property belonged to· the co-partnership and one of the co-partners had died and the surviving joint owner or the surviving partner or partners were seeking to have the joint property or co-partnership property surrendered and delivered to such joint owner or surviving partner or partners. As to the case .of the death of one of two or more joint lessees, where the property of such joint lessees was deposited in the safety deposit box or safe but the property of the several lessees had not been commingled and the property of the surviving lessee could be readily separated from the property of the deceased lessee, we see no difficulty in the way of the enforcement of the statute. All that would be necessary for the appellant to do to protect the rights of the surviving lessee would be to deliver to him his property and protect the parties representing the deceased by holding the property which belonged to the deceased lessee. If

inconvenience arises it would arise out of the joint rela-
tion of the parties, and might as readily arise between the
appellant, the surviving lessee and the personal represen-
tative or heir of the decedent as between the appellant and
the surviving lessee and the State.    Whatever inconven-
ience to the appellant or to the surviving lessee would be
caused by the joint occupancy of the safety deposit box
or safe would be necessarily an inconvenience which they
must have contemplated when they entered into the joint
relation, and would, we think, place each of them in a po-
sition where they could not object to the owners of the
property who succeeded to the rights of the deceased joint
lessee (which would include the State) from obtaining their
full rights in the property of the deceased lessee found in
such safety deposit box or safe.    We therefore conclude
that there is no constitutional objection to the enforcement
of the statute as to property owned jointly by a deceased
lessee and another and deposited in a safety deposit box
or safe, where the property of the several lessees has not
been commingled by the acts of the parties but has been
kept separate.    We think it can be said that where the
property of joint lessees has been commingled or is jointly
owned by the lessees, upon the death of one of the joint
lessees the parties who succeeded to the rights of the de-
ceased joint lessee (which would include the State) would
have the right, as against the appellant and the surviv-
ing lessee, to have the amount, character and value of the
property deposited jointly in such deposit box or safe de-
termined before the property is surrendered or delivered
by the appellant and to have the property belonging to the
parties who succeeded to the rights of the deceased lessee
valued and determined, and that the appellant and the sur-
viving joint owner who had assisted in creating such joint
relation could not complain of the enforcement of the stat-
ute, which was enacted for the determination of the rights
of the parties (which would include the State) who suc-

ceed, in part, to the rights of such deceased owner. Clearly, when the joint relationship was formed it was known to all joint owners who entered into the relation, as well as to the appellant, that if the death of one of the joint owners intervened before the joint relationship was terminated it would be necessary to determine the question of each joint owner's interest in the property. We think the same course of reasoning which controls where property is found in a safety deposit box or safe which was leased jointly and where the property of each lessee has been kept separate and apart, must, in favor of the State and all others interested in the property, be applied as against the appellant and the joint surviving owner who has commingled his property with a joint lessee who has died, and that the statute can be enforced in the same manner against the appellant and the joint surviving lessee who has voluntarily commingled his property, as against appellant and a joint lessee who has kept his property separate. We therefore hold the act constitutional in the latter as well as the former case.

A more difficult question is presented when the safety deposit box or safe has been leased by a co-partnership and one member of the co-partnership has died leaving co-partnership property remaining in such safety deposit box or safe. We think, however, if it be borne in mind that the co-partnership by the death of a co-partner is dissolved, and that while the assets may be lawfully retained by the surviving member or surviving members of the co-partnership they ultimately must account to the personal representative of the deceased partner for his share and that the inheritance tax will only be assessed upon the succession to what may remain after the partnership debts are paid, it must be held that the statute applies to a co-partnership lease and to co-partnership assets. We can see no objection to the personal representative of the deceased partner, and all other persons who have or will have an interest in

his estate, (which would include the State,) being informed as to the amount, character and value of the co-partnership assets in a leased co-partnership safety deposit box or safe at the time of the dissolution of the partnership by the death of a partner. In the *Graves case, supra,* it was held that while questions may arise as to the persons in whom the title rests, and such questions may affect the amount of the inheritance tax and the persons whose estate shall be chargeable with it, still, when those questions are finally determined, their determination relates back and becomes fixed as of the date of the death of the decedent. It can not be legitimately urged that the true object of the organization of the safety deposit company is to furnish receptacles where parties may secrete their property from the eye of the tax-assessing and tax-collecting officer of the State with a view of escaping taxation, or that when property is found in the possession of a safety deposit company which formerly belonged to a person who has since died or in which he is interested it should not be taxed, and we think no valid reason can be suggested why every person interested in property thus found (which would include the State) has not the right, whether it be held individually or jointly or by a co-partnership, to know the amount, value and kind of such property. When a partnership is dissolved by the death of a partner the law requires the surviving partner or partners to inventory the partnership estate, to have it appraised and to file a list of liabilities,— in short, to make a full showing of the partnership estate. It has never been thought that statutes of that character were unconstitutional by reason of the fact that the surviving partners were required thereby to disclose the partnership assets or spread upon the records of the county court the secrets of the business of the partnership. The whole scope and object of section 9 is to require a disclosure of the assets of the deceased person,—not alone those which are deposited in safety deposit vaults, but such as are held

by trust companies, corporations, banks or other institutions or by any person or persons; and there is no valid reason why, when assets are deposited in the safety deposit boxes or safes of a safety deposit company for safe keeping, the State, and every other person having a property right in such deposit, upon the death of the depositor should not be permitted, at the time such assets are withdrawn from the vaults of the safety deposit company, to be informed of their character, value and amount. We are fully convinced that the statute legitimately places the State in the same position as any other owner in regard to its right to be informed as to the value of the assets of a deceased lessee, and that the right of the State to secure such information rests on valid constitutional grounds.

We will now consider in detail some of the objections which are specifically urged by counsel for the appellant against the constitutionality of section 9.

It is first contended that the section impairs the obligation of the charter of the appellant. The charter of the appellant, which is its contract with the State, provides that it is organized "for the express purpose of providing a suitable building or buildings with vaults and safes, with a special regard to protection against loss by fire, robbery or otherwise, and to carry on the business of safety deposit and storage." In pursuance of its corporate powers it has provided a building and entered upon the business of renting safety deposit boxes and safes, and we are unable to ascertain wherein section 9 impairs, takes from or infringes any of the powers of the appellant granted to it by its charter. Section 9 in no way deprives the appellant of the right of constructing or renting a building, vaults, etc., or of renting its safety deposit boxes or safes, or deprives it of its right to act as a depository for hire and to receive and accept for deposit all securities or other valuables which may be delivered to it by its lessees, or prevents it from delivering to the rightful owner or owners

of or persons entitled to all or ˌany of such securities or other valuables as may have been delivered to it, upon the termination of the relation which is created between it and its lessees. The utmost that can be said is, that upon the termination of the relation which has been created between the appellant and a lessee by the death of such lessee, it cannot part with the possession of or surrender the securities or other valuables which have been placed in its safety deposit box or safe without pursuing the method contained in section 9, to the end that if there is due upon the succession of the property deposited with it an inheritance tax, the amount of such inheritance tax may first be determined and collected. The law has always been that a bailee must deliver the bailment to the person to whom it belongs, upon the termination of the contract of bailment, and all the legislature has done is to pass a statute which vests the State with an interest in the estate of a ˌdeceased person which is subject to an inheritance tax, and which provides that where the bailment is terminated by the death of the lessee and the property is to be surrendered by the safety deposit company, the State shall be treated as a part owner of such bailment and receive notice, through its appropriate officer, of the proposed surrender, to the end that it may receive and be paid its proper proportion of the property so deposited with appellant. This, as has heretofore been determined, is ˌnot an unreasonable or unconstitutional regulation. That the State has the right to modify, regulate or impose conditions upon the right of succession, by inheritance or by will, to property which was owned by a person who has died there can be no question. (*In re Estate of Speed, supra.*) The right to take property in pursuance of descent or will is wholly. statutory, and that such right may be changed by the legislature is unquestioned. (*Kochersperger* v. *Drake, supra; In re Estate of Speed, supra; In re Petition of Mulford, supra.*) The right to bequeath or devise property by will ơr to take by inherit-

ance can be enjoyed only because such right is conferred by statute. (*Evans* v. *Price, supra; Wunderle* v. *Wunderle, supra.*) The proposition that the State has the right to provide for an inheritance tax and to levy the tax upon the right of the succession to property, and to provide that the State shall take a vested interest in the estate immediately upon the death of the deceased, has become in this State axiomatic. We do not think, therefore, that a law which, in fact, only requires that the appellant shall not, without notice to the State, deliver the property which it has received into its vaults where the owner or part owner of such property has died since its receipt by the appellant, and, if it is subject to an inheritance tax, not deliver the same, without the consent of the State, until the tax is paid, can rightfully be said to infringe upon the charter rights of the appellant.

It is also contended that the appellant is deprived of property and liberty without due process of law, and that it is deprived of the due protection of the law, by said section 9. Having heretofore reached the conclusion that a safety deposit company is in possession and control of the securities and other valuables delivered to it by its lessees, and that the relation of bailee and bailor exists between the safety deposit company and its lessee, and that upon the contingency of the death of a lessee who is an owner, in whole or in part, of property in the possession of the safety deposit company the safety deposit company may rightfully hold such deposit, and must hold it, until it can deliver it to the true owner, and that the State is a part owner of the deposit in case it is subject to the payment of an inheritance tax, we think by the terms of section 9 the appellant's right of contract is not infringed upon and that it is not deprived of liberty, property or the due protection of the law,—in short, that section 9 provides first for the determination of the question, Is the property sub-

ject to an inheritance tax?—and if it is, that it must be paid before the appellant can rightfully part with the possession of the property. In this connection the objection to the statute that the appellant is made a trustee and tax gatherer without its consent may be considered, and the answer to these propositions will, we think, demonstrate the fallacy of the argument that the appellant has been deprived, by the statute, of liberty, property and the due protection of the law.

The appellant is not a trustee in the ordinary sense, but a bailee, and the fact, if it were a fact, that it is used, in part, as a tax-assessing and tax-collecting officer would not invalidate the statute. Numerous statutes have been passed by the legislatures of this and other States which require banks, trustees, executors, administrators and agents to return for taxation property in their possession, and such statutes frequently provide that if the banks, trustees, executors, administrators and agents holding such property surrender the same without the tax thereon being paid, they shall be liable for the tax. (*Walton* v. *Westwood*, 73 Ill. 125; *Ottawa Glass Co.* v. *McCaleb*, 81 id. 556; *Lockwood* v. *Johnson*, 106 id. 334; *Warren* v. *Cook*, 116 id. 199; *People's Loan and Homestead Ass'n* v. *Keith*, 153 id. 609; *Scott* v. *People*, 210 id. 594.) In many instances the corporations have been made collecting officers by being required to deduct the taxes from the stockholders' interests and pay them over to the State. (*Haight* v. *Pittsburg, Ft. Wayne and Chicago Railroad Co.* 73 U. S. 15; *United States* v. *Baltimore and Ohio Railroad Co.* 84 id. 322; *National Bank* v. *Commonwealth*, 76 id. 353; *Minot* v. *Philadelphia, W. & B. R. R. Co.* 85 id. 230; *Maltby* v. *Reading & C. R. R. Co.* 52 Pa. 140.) In *Citizens' Nat. Bank* v. *Kentucky*, 217 U. S. 443, the revenue law of Kentucky, which charged the banks with the duty of collecting the taxes on shares, was sustained. Mr. Cooley, in his work

on Taxation, (vol. 2, 3d ed. p. 832,) in discussing this subject, says: "For the most part, the taxes levied by the State are collected of the persons taxed or enforced against the property in respect to which they are imposed. In a few cases, however, in which such a course could not work injustice, the State may reach the party taxed by indirection, and collect, in the first instance, from someone else, who in turn will become collector from the person on which the tax is really imposed. The reason for this is, that in such cases it is more convenient to the State and perhaps makes more certain the collection, and it could be resorted to only when the case is such that injustice could result to no one. A case of the kind is where a tax is imposed on the dividends or other receipts of shareholders from the profits of corporations, or upon their shares, or upon the interest paid by indebted corporations, and where the corporation is required to make the payment, which it would then deduct from the payment to be made to shareholders or to the holders of the evidences of indebtedness. There is no doubt of the right to do this, except as to payments to be made to non-residents, nor even as to them if the statute under which their interests were acquired provided for the levying and collecting of taxes in that manner. Other instances are, where a tax is required under a lease, the amount of which tax may be deducted from the rent, or where the person having the custody of distilled spirits is obliged to pay the tax thereon, he being given a lien on them for what he so pays." We conclude the appellant is not deprived of its liberty, property or due protection of the law or wrongfully made a trustee or tax-gathering agent against its will.

It is also uged that the property of the lessees of appellant is subject to unreasonable searches and seizures. In the case of *People ex rel. Natch* v. *Reardon,* 184 N. Y. 431, and *People ex rel. Ferguson* v. *Reardon,* 197 id. 236,

the constitutionality of a statute was sustained which required the transferee of corporate stocks to keep a record of such transfer or transfers for the information of the tax-levying and tax-gathering officers, and in the corporation tax cases (*Flint* v. *Stone-Tracy Co.* 31 Sup. Ct. Rep. 343,) the Supreme Court of the United States sustained the constitutionality of a statute which required the corporations which fell within the purview of the statute then under consideration to keep a record for the inspection of the revenue officer which showed the net income of such corporations. In the *Flint case,* Mr. Justice Day, who spoke for the court, in the course of his opinion (p. 358) said: "It is urged in a number of the cases that in a certain feature of the statute there is a violation of the fourth amendment of the constitution, protecting against unreasonable searches and seizures. This amendment was adopted to protect against abuses in judicial procedure under the guise of law, which invade the privacy of persons in their homes, papers and effects, and applies to criminal prosecutions and suits for penalties and forfeitures under the revenue laws. (*Boyd* v. *United States,* 116 U. S. 632; 29 L. ed. 751; 6 Sup. Ct. Rep. 524.) It does not prevent the issue of search warrants for the seizure of gambling paraphernalia and other illegal matter. (*Adams* v. *New York,* 192 U. S. 585; 48 L. ed. 575; 24 Sup. Ct. Rep. 372.) It does not prevent the issuing of process to require attendance and testimony of witnesses, the production of books and papers, etc. (*Inter-State Commerce Commission* v. *Brimson,* 154 U. S. 447; 38 L. ed. 1047; 4 Int. Com. Rep. 545; 14 Sup. Ct. Rep. 1125; *Inter-State Commerce Commission* v. *Baird,* 194 U. S. 25; 48 L. ed. 860; 24 Sup. Ct. Rep. 563.) Certainly, the amendment was not intended to prevent the ordinary procedure in use in many, perhaps most, of the States, of requiring tax returns to be made, often under oath." In the cases heretofore referred

to, the assessed corporations or individuals were required to keep a record for the information of the tax-assessing and tax-collecting officers, while the statute under consideration here requires only that notice be given, and that the representative of the State be permitted to be present at the time the property is surrendered. The representative of the State, in this instance, gets the information first hand, while in the instances covered by the *Reardon* and *Flint cases* the tax officers obtained the information from a record which those statutes required to be kept for their information. If the legislature or Congress may require such record to be kept, we see no reason why the information, which is the important thing, may not be required to be given direct to the tax officer.

It is finally contended that the property of the appellant and its lessees is devoted to a public use without just compensation, in this: that it is held pending the notice to the officers of the State required by the statute and pending the time of the determination by such officers of the liability to the succession of the property to be subjected to an inheritance tax. If the required notice is lawful and the determination of the question whether the succession to the property in the possession of the safety deposit company is subject to the payment of an inheritance tax is proper, then there is no infringement upon the constitutional provision, either State or national, which forbids property to be taken for public use without just compensation. In the very nature of things, in the settlement of estates of deceased persons there must be some delay in determining who is entitled to receive the estate, and as we have heretofore held, when the appellant leases its safety deposit boxes and safes, it and its lessees must necessarily have contracted with reference to the inevitable fact that some of its lessees will die pending the continuation of their leases. This being true, we think it manifestly fol-

lows that appellant's leases are made and the rent therefor is fixed upon the contingency that in case of the death of a lessee pending the lease there will be some delay in the delivery of the property of the lessee to the true owner by the appellant. The only damage that the appellant could incur in such cases would be the loss of box or safe rent during the time of said delay, which, upon a safety deposit box or safe which rents for five dollars a year, would be inconsiderable, and we must conclude, as to the appellant, that the question of box rent or safe rent is a matter that was taken into consideration when the lease was executed. As the lessee is dead, he clearly will be deprived of nothing by reason of such delay. Those persons who are to succeed to his estate take what they get only by force of the Statute of Descent and Statute of Wills, and as the inheritance or bequest which they receive comes to them burdened with the inheritance tax which the law places upon their right of succession, they necessarily take their inheritance or bequest subject to the costs, expenses and damages accruing out of the delays which must intervene before they may enjoy their inheritance or bequest. We therefore conclude that neither the appellant nor its lessees are, within the meaning of the law, deprived of property for a public use without just compensation.

We have given this case the patient care which its importance demands, and have reached the conclusion that section 9 of the Inheritance Tax law of 1909 is a valid and constitutional enactment.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

FARMER, VICKERS and COOKE, JJ., dissenting.