## Northern Trust Co., Trustee, Appellant, v. Buck & Rayner, Appellee.

### Gen. No. 19,220.

1. **Descent and distribution, § 3*—property descends by statute.** The right to take property by will or descent is statutory in Illinois.

2. **Taxation, § 677*—nature of inheritance tax.** An inheritance tax is not a tax upon property, but is an excise tax or duty upon the privilege of taking property by will or descent.

3. **Taxation, § 677*—inheritance tax reserves portion of premises to State.** That a portion of premises is reserved to the State by terming it an inheritance tax does not alter the fact that such tax is a reservation to the State of a portion of the premises.

4. **Landlord and tenant, § 199*—when lessee is not liable for inheritance tax.** Where a lessee covenants to pay as additional rent all taxes and charges of every nature which the lessor shall be required to pay by reason of or on account of his interest in the land, but does not covenant to indemnify the lessor for such portion of the premises as the State may see fit to reserve to itself, on the death of the lessor the lessee is not liable for the inheritance tax on the premises.

Appeal from the Circuit Court of Cook county; the Hon. John P. McGoorty, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed November 3, 1913.

Mason Brothers, for appellant; Henry B. Mason, of counsel.

D'Ancona & Pflaum, for appellee.

Mr. Justice Smith delivered the opinion of the court.

The appellant, the plaintiff below, filed a declaration in covenant against the appellee, the defendant below, the assignee of a certain lease. The appellee craving oyer of the lease and other instruments, profert was made thereof and thereupon the appellee demurred. The court sustained the demurrer and the appellant electing to stand on its declaration, judgment was ren-

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

dered against it and this appeal prosecuted therefrom.

It appears from the pleadings that one Ralph E. Starkweather on May 1, 1903, was the owner of a certain described lot, being the southwest corner of State and Adams streets in Chicago, and on said date made a ninety-nine year lease thereof. The lessees therein agreed to pay to the lessor a certain yearly rental, and further:

"Second, the lessees covenant to pay in the name of the lessor, as additional rent for the property above demised, promptly when due, all water rates and all taxes, assessments and municipal or governmental charges, general and special, ordinary and extraordinary, of every nature and kind whatsoever, which may, after April 30, A. D. 1905, during the life of this lease become payable (a) levied, imposed or assessed upon any land hereby demised or upon any improvements at any time during the life of this lease situated upon said land, or (b) levied, imposed or assessed upon any interest of the lessor in or under this lease, or (c) which the lessor shall be required to pay by reason of or on account of his interest in said land and improvements or in or under this lease; the first general annual taxes to be paid by the lessees being those levied for the year 1905 and payable in the year 1906, and the last being those levied for the year 2001. Every such tax, assessment and charge shall in any event be paid in time to prevent the addition of any interest or penalty thereto.    *    *    *

Sixth.    *    *    *    The lessees further covenant that they will, at all times prior to the termination of this lease and to the delivery to the lessor of possession of said land and improvements, pay and discharge and indemnify the lessor against (1) any and all liens and charges of any and every nature and kind which may at any time be established against said land and improvements, or any part thereof, as a consequence, direct or indirect, of any act or omission of the lessees or as a consequence, direct or indirect, of the existence of the lessees' interest under this lease; (2) any and all loss, cost, damage or expense sustained by the les-

sor (including the attorney's and solicitor's fees and the expenses of the lessor), (a) on account of or through the use of said land or improvements, or of any part thereof, by the lessees or by any other person whomsoever, for any purpose inconsistent with the provisions of this lease; (b) arising out of or directly or indirectly due to any failure of the lessees in any respect promptly and faithfully to satisfy their obligations under this lease; (c) arising out of or directly or indirectly due to any accident or other occurrence causing injury to any person or persons or property whomsoever or whatsoever resulting from the use of said land and improvements or any part thereof under this lease; (d) for which the said land and improvements or any part thereof or the lessor as owner thereof or interested therein may hereafter without the fault of the lessor prior to the termination of this lease and to the delivery to the lessor of said land and improvements, become liable, and especially (but not exclusively) any such loss, cost, damage or expense that may arise under any ordinance or statute or any municipal or governmental regulation. * * *

Eighth. The lessees covenant that if they shall fail promptly to satisfy any of their obligations under this lease, the lessor may (but shall not be bound so to do) advance and pay any moneys necessary to make good such default of the lessees; and if the lessor pay any rates, taxes, assessments or charges aforesaid, or redeem said land and improvements, or any part thereof, from any tax sale, or purchase and cancel any tax title based on any such sale (and the lessor is hereby fully authorized but not required to advance and pay money for any of said purposes), it shall not be obligatory upon the lessor to inquire into the validity of any such rates, taxes or assessments, or of any such sale, or of any such tax title. * * * The lessees further covenant to repay to the lessor, within ten (10) days after written notice is given them (the lessees) of any advance and payment above provided for, the principal sum or sums so advanced, with interest at the rate of seven (7) per centum per annum from the date of such advance until repayment thereof."

The lessor died, leaving a last will and testament,

whereby he devised the said lot, with certain other property, to the appellant, in trust nevertheless for the benefit of his wife and son. The will contained the following provision:

"In the event that my estate outside of my 'State Street Property,' shall be insufficient to pay my just debts, secured or unsecured, funeral expenses and the costs of administration, including in the costs of administration any succession, inheritance taxes or other like charges on my estate or on the interest of any devisee, legatee or beneficiary hereunder, then for the purpose of raising funds to pay the whole of the same, or one-half thereof, if only half of my estate be held in trust, I hereby direct and expressly authorize said trustee to borrow money for any one or more or all of said purposes and secure the same by mortgage or trust deed on said 'State Street Property' or on the interest of this trust thereon, and turn the money so obtained over to my executor to be applied in payment thereof. I make this provision in order that so much as possible of the income of my said 'State Street Property' may be at once available under the terms hereof for the benefit of the beneficiary or beneficiaries hereunder."

Under the provisions of the act to tax gifts, legacies, inheritances, etc., in force July 1, 1909, the said lot was appraised at $425,000, unincumbered, and with certain personal property making a total net amount of $440,542.50. From this amount were exemptions amounting to $40,000, leaving an estate on which the County Court fixed the inheritance tax at the rate of two per cent., amounting to $8,010.65.

The appellant contended that under the provisions of the lease this tax should be paid by the appellee, which it declined to do. The appellant then paid the said amount and brought this action to recover therefor. The question whether the provisions of the said lease include the payment of the inheritance tax as one of the covenants of the lessee is the only question presented for our determination. The question is a new

one so far as we are advised, and a very nice one, by no means free from difficulty.

It is agreed by both parties that the appellee is not liable herein under either clause *a* or *b* of the said second paragraph of the lease. It is appellant's contention that the appellee is liable under clause *c* thereof. The said second paragraph binds the appellee to pay as additional rental "all water rates and all taxes, assessments and municipal or governmental charges, general or special, ordinary and extraordinary, of every nature and kind whatsoever  *  *  * (c) which the lessor shall be required to pay by reason of or on account of his interest in said land and improvements or in or under this lease." This language is certainly very broad and on first impression seems to plainly support the appellant's contention. But on a review of the authorities and a careful consideration thereof and of the exhaustive and learned arguments of counsel, we have concluded that the inheritance tax, because of its nature, must be held not to be included within the terms of the said lease.

It has been repeatedly held that an inheritance tax is not a tax upon the property, but an excise tax or duty upon the privilege of taking property by will or descent. In *Kochersperger v. Drake*, 167 Ill. 122, the Court says: "The amount reserved to the State from the estate of a deceased owner is not a tax on the estate, but on the right of succession." In *National Safe Deposit Co. v. Stead*, 250 Ill. 584, it is said: "It has been decided by this court that an inheritance tax is a tax upon the right of succession and is not a tax upon the property itself." To the same effect are: *In re Graves' Estate*, 242 Ill. 212; *People v. Griffith*, 245 Ill. 536; *Magoun v. Illinois Trust & Savings Bank*, 170 U. S. 283; *State v. Ferris*, 53 Ohio St. 314; *State v. Dalrymple*, 70 Md. 294; *State v. Hamlin*, 86 Me. 495; *In re Swift's Estate*, 137 N. Y. 77; *In re Finnen's Estate*, 196 Pa. St. 72; *Booth's Ex'r v. Commonwealth*, 130 Ky. 88; *Knox v. Emerson*, 123 Tenn. 409; *Beals v.*

*State,* 139 Wis. 544; *Morrow v. Durant,* 140 Iowa, 437.

In *Kochersperger v. Drake, supra,* the Court says: "The laws of descent and the right to devise and take under a will within the State of Illinois owe their existence to the statute law of the state. The right to inherit and the right to devise being dependent on legislative acts, there is nothing in the constitution of this State which prohibits a change of the law with reference to those subjects at the discretion of the law-making power. The laws of descent and devise being the creation of the statute law, the power which creates may regulate and may impose conditions or burdens on a right of succession to the ownership of property to which there has ceased to be an owner because of death, and the ownership of which the state then provides for by the law of descent or devise." *North v. Graham,* 235 Ill. 178; *Selden v. Illinois Trust & Savings Bank,* 239 Ill. 67; *United States v. Perkins,* 163 U. S. 625; *Eyre v. Jacob,* 14 Grat. Va. 422; *Trippet v. State,* 149 Cal. 521.

In *National Safe Deposit Co. v. Stead, supra,* the Court says: "It has been determined that the right of the State to such taxes is a vested right, and that such right vests in point of time at the time the estate vests, —that is, upon the death of the decedent. The State, therefore, has a vested financial right in the estate of every decedent in this State which is subject to the payment of an inheritance tax, and that right is equal in degree to that of the personal representative, the heir or the devisee of the decedent, and it vests at the same moment of time that the interest of the personal representative, heir or devisee vests."

It is also said: "The proposition that the State has the right to provide for an inheritance tax and to levy the tax upon the right of the succession to the property and to provide that the State shall take a vested interest in the estate immediately on the death of the deceased, has become in this State axiomatic."

*In Re Finnen's Estate, supra,* the Court says: "That which the legatee gets and keeps is the aggregate sum bequeathed, less the amount of the tax. The tax must

be retained by the person who has the decedent's property in charge. It is, therefore, not a tax upon the property or money bequeathed, but a diminution of the amount that otherwise would pass under the will or other conveyance, and hence that which the legatee really receives is not taxed at all. It is that which is left after the tax has been taken off."

The right to take property by will or descent being statutory in this State, although it is considered otherwise in some States, and there being a reservation under the said statute to the State of a certain portion of the said premises that immediately vested in the State on the death of the decedent, and the said estate passing to the appellant is thereby to that extent diminished, it would seem to us to necessarily follow that at no time had the appellant any right or interest in the said portion so reserved to the State. If this view be sound, we think the appellee not liable for the reason that the lease by its terms does not, either expressly or impliedly, obligate the lessee to indemnify the lessor for such portion of the premises that the sovereign power, the State, may at any time see fit to reserve to itself. On the death of the decedent a certain portion of his said premises vested in the State and the remaining portion thereof vested in the appellant. On that going to the appellant there was no tax, assessment or charge to be paid by the appellant under the statutes in question. The logic of appellant's contention would lead to holding the appellee liable for a quarter, a third, or more of the said premises, were such portion by the inherent power of the State reserved to itself, which seems to us neither within the terms of the lease nor contemplated by the parties. Certainly not by the lessor, if the provision in his last will and testament providing for the payment of the inheritance taxes be considered.

How the portion of the premises may be reserved to the State, or collection made therefor, or that the same is termed an inheritance tax, an excise tax, duty, charge or any other of the many names it has been

found convenient to designate same, in no way changes the rule that is by the logic of the decisions in fact a reservation to the State of a portion of the said premises.

The judgment is affirmed.

*Affirmed.*