# SECURITY STORAGE AND TRUST COMPANY

### *vs.*

# JANE BURNS MARTIN.

*Safe Deposit Box—Disappearance of Securities—Negligence—Burden of Proof.*

The owner of a safe deposit vault is the bailee of securities placed in a box therein by one to whom the box is leased, although such owner cannot open the box without the aid of a key in the lessee's possession, and as a bailee for mutual benefit or for hire it owes to the lessee of the box the duty to exercise ordinary care and diligence in guarding such contents of the box. pp. 548, 549

Plaintiff having testified that she placed bonds in the safe deposit box rented by her from defendant, that the box was then placed by defendant's employee in the locker which was in defendant's possession, and the door of the locker locked; that the door could not thereafter be unlocked without the use of the master key, which was also in defendant's possession; that when the box was next opened by plaintiff some weeks later, the bonds were gone and defendant was unable to account for their loss; and that defendant had failed to deliver said bonds to plaintiff or account for their non-delivery, *held* that defendant's failure to deliver and account for the bonds should be treated as *prima facie* evidence of defendant's negligence as regards the safekeeping of the contents of the box.

pp. 551, 552

It was proper to instruct the jury that if defendant's employee in charge of the vault, at plaintiff's request, unlocked the locker by the use of the master key in connection with plaintiff's key and, after she placed the securities in the box, he returned it to the locker, and handed her the key, and two or three weeks later she discovered that the securities were not in the box, but had been by some person unknown to her abstracted therefrom, and she notified defendant of their disappearance, and thereafter made demand on it for their return,

the burden was on defendant to show by a fair preponderance of evidence that in guarding and safekeeping the said box with its contents, it exercised the same degree of care that would ordinarily be exercised by persons or corporations engaged in the same business under similar circumstances.     pp. 538, 552

*Decided January 18th, 1924.*

Appeal from the Court of Common Pleas of Baltimore City (AMBLER, J.).

Action by Jane Burns Martin against the Security Storage and Trust Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The plaintiff's prayers were as follows:

*First.*—The court instructs the jury that if they find from the evidence that the defendant is a corporation engaged in the security and storage warehouse business, at 13-15 W. North Avenue, in the City of Baltimore, and that as a part of its said business it has a vault upon its said premises, in which it has constructed safe deposit boxes with lockers, which it rents at and for an annual rental to those persons who may desire to deposit therein for safe keeping securities and valuable articles of personal property and that it delivers to the renter of each of said boxes duplicate keys thereto, neither of which keys, however, can be used by the said renter without the use of a master key retained by the defendant to be used by it or its agents in the opening of any of said boxes: Then the defendant as to such persons so renting said boxes and lockers, and as to the securities or articles of personal property placed therein by said renters is bound to exercise reasonable care and caution in the safe keeping of said safe deposit boxes and lockers and the contents therein, and by reasonable care and caution is meant such care as a reasonably prudent person or corporation engaged in the same business would exercise under like circumstances.

*Second.*—If the jury finds the facts set forth in plaintiff's first prayer, and further find that the defendant rented to plaintiff one of said safe deposit boxes with its locker, in its said vault, who paid the rental therefor, and that on or about the 14th of September, 1920, the plaintiff deposited in said box certain securities belonging to her, to wit: One $500 U. S. Victory 4¾% Bond, No. D-420579. One $100 U. S. Victory 4¾% Bond, No. F-6261387. One $100 U. S. Liberty 4¼% Bond, number unknown, with the coupons from December 15, 1920, inclusive, thereon.

And if the jury further find that the defendant had in charge of said vault on the date aforesaid a young man, who upon request from plaintiff used the said master key for the purpose of unlocking said locker, in connection with the plaintiff's key, and after plaintiff had placed the said securities in her said box, the said young man returned the said box to the said locker, apparently locking the same, and handed back her said key. And then, subsequently, on or about 6th of October following, the plaintiff visited said vault for the purpose of getting something out of her said box, and when the locker was opened by the defendant's agent, and her said box handed to her she discovered that the said $700 U. S. Victory and Liberty Bonds were not in the said box, but had been by some one unknown to her abstracted therefrom, and that the plaintiff promptly notified the defendant of the disappearance of said bonds, and thereafter made demand upon the defendant for the return of the same to her, then the court instructs the jury that the burden is upon the defendant to show by a fair preponderance of evidence that in guarding and safekeeping the said box with its contents, it exercised the same degree of care that would ordinarily be exercised by persons or corporations engaged in the same business under similar circumstances. And if the jury further find that the defendant has failed to comply with said demand, then they may infer that the defendant has been guilty of the want of ordinary or reasonable care in guard-

ing and safe keeping said box and locker, and the securities therein.

*Third.*—If the jury find the facts set forth in plaintiff's first prayer, and that the defendant rented to the plaintiff a safe deposit box and locker in its said vault, and that the plaintiff paid the rental thereof, and deposited therein the securities as mentioned in the evidence, and that said securities were abstracted from the said box by some one unknown to the plaintiff, and without the knowledge or consent of the plaintiff, and that defendant did not exercise due care and caution in protecting and safe keeping the said box and locker, and the securities placed therein by the plaintiff, then the court instructs the jury that the plaintiff is entitled to recover in this action, and their verdict should be for the plaintiff for the value of said securities at the time when they were so abstracted, with interest thereon, in the discretion of the jury, at the rate of 6% per annum from that time to date of the verdict.

*Fourth.*—If the jury find that the $700 Victory and Liberty Bonds mentioned in the evidence were placed for safe keeping by the plaintiff in the safe deposit box rented by her from the defendant (if the jury find said renting) and that said bonds were abstracted from the said box by some one unknown to the plaintiff, and without her knowledge or consent and have been wholly lost to her, and that said loss was due to the failure of the defendant or its agents or employees to exercise that degree of care and caution or to employ those means and facilities which ordinarily prudent business men in the same business, and under the same circumstances would have exercised and employed, in the guarding and safe keeping of like securities so deposited, then their verdict will be for the plaintiff.

*Fifth.*—If the jury find from the evidence the facts set forth in plaintiff's first prayer, and further find that defendant rented to the plaintiff for an annual rental which was paid, a safe deposit box in its vault, and that the plain-

tiff deposited therein the securities as mentioned in the evidence, then as to such securities, the defendant, by reason of the possession of the master key which withholds plaintiff's access to said safe deposit box, is to be considered as in possession thereof, and is charged with the duty of a bailee for hire, and is bound to exercise due and reasonable care in the protection and safe keeping of said securities and to deliver them up to the plaintiff upon demand; and if the jury further find that said securities were abstracted from her said box by some one unknown to the plaintiff, and without her knowledge or consent and have been wholly lost to her, and that the defendant has failed to deliver same to her upon demand, if the jury so find, then the plaintiff is entitled to recover in this action, and the verdict of the jury should be for such damages as they may find from the evidence the plaintiff has suffered.

The defendant's prayers were as follows:

"*A.*"—The defendant prays the court to instruct the jury that there is no evidence in this case legally sufficient to entitle the plaintiff to recover, and, therefore, their verdict must be for the defendant.

*First.*—The defendant prays the court to instruct the jury that the burden rests upon the plaintiff of proving by a preponderance of evidence—(1) That the bonds mentioned in the evidence were actually deposited by the plaintiff in the safe deposit box rented by her from the defendant and that the said bonds were not in the said box when the said plaintiff next went into it, and—(2) That the said defendant did not use "a reasonable degree of care" in the proper safe guarding of its safe deposit vault and deposit boxes, by which is meant that degree of care which a reasonably prudent person would exercise under substantially similar circumstances, and—(3) That the said defendant did not use due and proper care in the selection and employment or retention therein of its agents, servants and employees, or—(4) That the plaintiff's bonds were lost by reason of defendant's lack of

reasonable care in the operation and management of its safe deposit department. And if the minds of the jury are in a state of equilibrium or equipose, then their verdict must be for the defendant.

*Second.*—The defendant prays the court to instruct the jury that in order for the plaintiff to recover in the case at bar, the jury must find from the evidence either—(1) That the defendant was negligent in that it did not exercise that degree of care which a reasonably prudent and cautious man would exercise in regard to his property under similar circumstances, or which any company doing a substantially similar business would exercise, or—(2) That the employees, or some of them, of the defendant, were dishonest, and if the jury find such to be the fact, even then their verdict, if based solely on this fact, must be for the defendant, unless they further find that the defendant knew, or by the exercise of reasonable diligence could have known, of the dishonesty of any of its employees or unless such knowledge was brought home to the defendant, and that the defendant with such knowledge, or means of knowledge, continued to employ such employee or employees.

*Third.*—The defendant prays the court to instruct the jury if they shall find from the evidence in this case that such care was exercised by the defendant in safe guarding the safe deposit box rented to the plaintiff in this case as ordinarily prudent safe deposit companies in a similar situation and business would exercise with respect to safe deposit boxes rented by them, then their verdict must be for the defendant.

*Fourth.*—The defendant prays the court to instruct the jury that the plaintiff in this case is entitled to such security as the course of business between her and the defendant shows to have been mutually intended and expected between them, and that the defendant is not obliged to prove a condition of perfect safety in the management of its safe deposit vaults, nor a condition beyond any possible speculative theory of insecurity.

*Fifth.*—The defendant prays the court to instruct the jury, if they shall find from the evidence in this case, that the defendant used such care and diligence as ordinary prudence would sugest, and such as was properly adopted to the preservation and protection of the plaintiff's property deposited in the safe deposit box mentioned in the evidence, that then the defendant would not be responsible for the losses mentioned in the evidence, and in this connection the jury are entitled to take into consideration any facts which may tend to show the degree of security which was mutually intended and expected between the parties to this case, plaintiff and defendant, from the course of business between them, if the jury so find, as also the sufficiency of the equipment of the defendant's safe deposit vault, and the protection afforded by the defendant to the renters of its safe deposit boxes as compared with the protection generally afforded by companies conducting a safe deposit business under substantially similar circumstances and conditions.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Joseph Townsend England* and *J. Edward Tyler, Jr.,* for the appellant.

*Thomas Mackenzie,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellee recovered in the Court of Common Pleas of Baltimore City a judgment against the appellant, the Security Storage & Trust Co., for the loss of certain United States Victory Bonds that she had placed in a safe deposit box in the vault of the appellant, which she had rented from it, and which bonds, as claimed by her, were abstracted therefrom as a result of the negligence and default of the appellant in not using ordinary care and dili-

gence in guarding and safekeeping the contents of said box. It is from that judgment the appeal in this case is taken.

In the trial of the case but one exception was taken, and that relates to the rulings of the court upon the prayers.

The plaintiff offered five prayers. The first, second and third were granted. The other two were rejected. The defendant likewise offered five prayers, and all were granted except the first, which asked for a directed verdict against the plaintiff, because of the alleged want of evidence legally sufficient to go to the jury. This prayer was refused.

The appellee testified that, on the 14th day of September, 1920, she was the owner of United States Victory Bonds to the amount of $650, which she had bought from the Eutaw Savings Bank. That she was then, and had been since 1905, a renter of a safe deposit box in the vault of the appellant. After deciding that she would increase the amount of the bonds to the sum of seven hundred dollars and deposit them in her safe deposit box, she went on the day named to the Eutaw Savings Bank, and got the bonds that she had bought and left there. From there she went to the Drovers & Mechanics National Bank and exchanged the fifty dollar bond for a bond of one hundred dollars, by paying to the bank the sum of fifty dollars. After getting said bond she put it with the others in her hand-bag and walked to the corner of Fayette and Eutaw Streets, at which point she took a car and rode to the corner of North and Guilford Avenues, and from there she walked over to the Security Storage & Trust Co., located on the south side of North Avenue, just west of Charles Street. That while on the car she put her hand in her hand-bag to "be sure they (the bonds) were there, she had nothing else in there, she had gone for the one purpose to get these bonds." Upon leaving the car she went immediately to the Security Storage & Trust Co. and finding the doors open, she entered its vault. In it she found two men, one of whom was an employee of the company, who afterwards waited upon her and whose name she was told was Smith. She

said to him that she wished to put some papers in her box, whereupon he got the master key that was held by the company, and with it and the key in her possession, which she handed to him, he opened the door of the locker and pulled her box out. She at the time told him that she would put the "papers" in it without going to the booth, and while the young man held the box, she lifted its lid and put the bonds, which were rolled up in such a way as not to disclose what they were, in the box. That when she put them in the box the lid was a "little hard to push down," due to the fact that the bonds were in a roll and the box shallow.

The young man, while she was still in the vault, put the box in the locker and as she supposed "locked the locker securely." He then handed to her her key. The other man at the time was at the end of the vault. She next returned to the vault on the 6th of October of the same year, to cut the coupons. She was by herself. The same gentleman who had waited upon her on September 14th accompanied her to the vault, and the door of the locker was again opened in the same manner that it had been opened on the previous occasion. But this time she took the box and went into the booth. When she got into the booth she discovered, upon opening the lid, that the bonds were gone. She was so confounded and confused that she went straight to her little apartment on Maryland Avenue, not far from the Security Storage and Trust Company, and there she looked into her hand-bag for the bonds, but as she says, "of course she did not find them." She said nothing to the company about the loss of the bonds before going to her home, but upon her return to the Security Storage & Trust Co., after being absent about fifteen minutes, she talked with Mr. Bucher, its treasurer, and told him of the loss of the bonds. He went with her to the vault, pulled her box out and looked through it, and looked also among his own securities for the bonds, but could not find them. He then told her to get the numbers of her bonds.

She also testified that she could not recall ever seeing a watchman at the Security Storage & Trust Co.; that anyone

behind the counter in the office would wait on her, and she was not always admitted to the vault by the same clerk. That upon the suggestion of Mr. Bucher, she obtained the numbers of the bonds from the Eutaw Savings Bank, and then, in an effort to locate the bonds she wrote to Washington, and in reply to her letter, the Register of the Treasury wrote her on December 21, 1920, that the records of the office did not indicate that the coupons on the bonds had been received in the office for registration, and that she would be notified if any of them were presented for payment. Later the attorneys for the appellants also wrote to the authorities in Washington, to get information as to the bonds. In response to this letter, written on February 23rd, 1923, they received a letter from C. N. McGroarty, Chief Division of Loan and Currency, in which they were told that the coupons from some, if not all, of the bonds had been received, some so late as August, 1921, showing that at such time the bonds were still in existence and not destroyed.

The appellee further testified that, upon failure to locate the bonds, she upon several occasions called upon Mr. Bucher and also Mr. King, president of the appellant company. On one occasion she said to the latter that the bonds that were lost were intended for her declining years, but that she had found that she would have to use them to defray the charges of an anticipated surgical operation on her, and now that the money was gone, she would be without means to pay such charges and consequently she would have to forego having the operation performed. She was then asked by him, "What church do you attend?" and when she replied to this question he said, "Why don't you ask them to help you?" to which she replied, it was against her instincts to do so.

In her evidence is also found the statement that on one of her visits to the company's place of business, when accompanied by Mrs. Cooksey, she saw Mr. King, who called to his office two young men, and he asked her if she could identify the young man who was present on the occasion

when she put the bonds in the box, whereupon she readily identified one of them as that person, and to him she said: "Don't you remember my going in and my putting those papers in the box and you helping me to close the lid?" "No," he said, "I don't remember, you come here so often." It was, however, admitted by the company that appellee was in the vault on September 14th, 1920.

The witness also said that she was not always called upon to sign a book registering her entrance into the vault, as required under the rules of the company. She also stated that the locker containing her box could not be opened with her key alone, but that both it, and the master key kept by the company, had to be inserted in the lock, but which was first inserted, she could not say; that there was always somebody from the company with her when she entered the vault, to help her, she would give to such party her key and he would open the locker and take out the box and hand it to her, and that when she finished with the box she would hand it back to him and he would put it back in the steel receptacle, after which the door would be locked and her key pulled out and given to her. She always supposed that the box was locked, but did not look to see—took it for granted, as her key could not be removed from the door until the door was locked.

Mrs. Nellie Young, a witness produced by the plaintiff, testified that she had a box in the appellant's vault and that on one occasion she went to the vault, where the locker was opened by an employee of the company by the use of the master key and her key, and the box handed to her. She went with the box to the booth, leaving the door of the locker open with the key in it so that she, when she had finished with the box could put it in the locker, close the door, lock it, and take her key from it without troubling the young man. When she returned from the booth to the vault with her box, she found the door of the locker from which her box had been withdrawn closed and the key out of it, although, as she

stated, she had left the door open with the key in it. When
the young man came into the vault she asked him what had
become of her locker and he replied, "I expect I sold your
box while you were in the booth." This was found to be
true; while she was in the booth he had disposed of the locker
in which her box had been kept and had given the party her
key, which had been left in the door. The locker had been
disposed of to such party and she had been given but one key
thereto, the other key still being in the possession of Mrs.
Young. Whether the party was told of this fact or not, is not
disclosed by the evidence, but thereafter Mrs. Young was
asked to call her daughter up over the 'phone and tell her
to deliver to the messenger, that was to be sent by the com-
pany for it, the other key held by her, which was at her home.
This left Mrs. Young without a locker in which to put her
box, and it appears that they were not at the time able to
provide her with another, and she therefore was required to
wait until late in the afternoon of that day before another
locker was assigned to her. In the meantime the contents of
her box was left in the possession of the company.

It was also disclosed by the evidence that the keys to the
unused lockers were kept within the vault accessible to the
employees of the company and were there kept until the box
was rented. Allowing the key of the unused box to remain
in such place until the box was rented afforded a dishonest
employee an opportunity to have a duplicate of such key
made, which after the box had been rented could be used by
him in opening the locker, thereby enabling him to remove
the contents of the leased box.

The evidence showing these facts, as well as the facts
relating to the disposition of Mrs. Young's locker, was pro-
duced without objection, to characterize the alleged negligent
and careless methods employed by the company in caring for
the boxes rented to its customers.

The defendant's first prayer raised the question whether
the evidence above stated was legally sufficient to go to the

jury as tending to show the liability of the defendant for the loss of said bonds.

In passing upon this question we are to consider the relation existing between the parties and the duties and obligation of one to the other.

There is some variance and confusion in the decisions of the courts and in the conclusions of text writers as to the proper definition of the relation existing between the lessor and lessee of safe deposit boxes, under conditions similar to those in this case.

In some of the cases and by some of the text writers, it is held that the relation between them is that of lessor and lessee, while in many of the best considered cases, both in this country and in England, the courts have regarded and treated a transaction such as the one before us as a bailment, and the relation existing between the lessor and lessee of the boxes as that of bailor and bailee.

In *National Safe Deposit Co.* v. *Stead,* 250 Ill. 593, it was said by the court: "We think it clear that where a safety deposit company leases a safety deposit box or safe, and the lessee takes possession of the box or safe and places therein his securities or other valuables, the relation of bailee and bailor is created between the parties to the transaction as to such securities or other valuables, and that the fact that the safety deposit company does not know, and that it is not expected it shall know, the character or description of the property which is deposited in such safety deposit box or safe does not change that relation, any more than the relation of a bailee who should receive for safe keeping a trunk from a bailor would be changed by reason of the fact that the trunk was locked and the key retained by the bailor, although the obligation rested upon the bailee with reference to the care he should bestow upon the property in the trunk might depend upon his knowledge of the contents of the trunk. Obviously, the bailee would be in possession of the trunk and its contents and no amount of argument would demonstrate

that while the trunk was in the possession of the bailee its contents were in the possession of the bailor, solely by reason of the fact that the bailor of the trunk retained the key and the bailee did not have access to the trunk. We are of the opinion that the relation of bailee and bailor exists between the appellant and its lessees, and that the deposit of the securities and valuables by its lessees in rented safety deposit boxes or safes is a bailment, and that the law applicable to bailments generally, applies to such a transaction and to such property.

In *Trainer* v. *Saunders,* 270 Pa. 451, the court, in dealing with a similar state of facts, said: "the contract with the Trust Co. made it a bailee of the contents of the box. *Reading Trust Co.* v. *Thompson,* 254 Pa. 333; *Safe Deposit Co.* v. *Pollack,* 85 Pa. 391; *National Safe Deposit Co.* v. *Stead,* 250 Ill. 584, 95 N. E. 973, Ann. Cas. 1912 B, 430. It was a custodian for hire, and had no other interest than the receipt of the rent charged, which, in accordance with its rules, was paid in advance. One of the keys was in the possession of the defendant, but this could be used only in connection with the master key held by the company." And a the same effect are the cases of *West Cache Sugar Co.* v. *Hendrickson,* 56 Utah, 327; *Gerrish* v. *Muskegon Sav. Bk.,* 138 Mich. 46, 4 Ann. Cas. 1083.

If the contract between the parties in this case is to be regarded as a bailment, and in our opinion it is such a contract, it is a bailment for mutual benefit, or for hire, and it was therefore the duty of the bailee to exercise ordinary care and diligence in relation to the subject matter of the contract; consequently its failure to exercise such care and diligence would subject it to liability. C. J. 1121; *Hambleton* v. *McGee,* 19 Md. 43; *Amer. Dist. Tel. Co.* v. *Walker,* 72 Md. 454; *Baltimore Refrigerating Co.* v. *Kreiner,* 109 Md. 361. But whether the relation was that of bailor and bailee or lessor and lessee, its duty and liability were the same. For as was said in *Jones* v. *Morgan,* 90 N. Y. 8, of a ware-

houseman for the security of goods stored in a room in his warehouse, which he had rented to the plaintiff, "It is not absolutely essential to determine whether the contract between the plaintiff and the defendant was one of bailment of. the goods or of hiring the room in which they were stored, because whichever it was, the defendant was bound to exercise ordinary care and prudence in guarding them. Such a responsibility was imposed upon him by the very nature of the transaction. The plaintiff was seeking a safe place for the storage of her goods. The defendant had a storehouse in which the storage business was carried on, and he assured her that her goods would be safe therein, and that they would be under the guard of a watchman by night and a responsible or reliable man by day. The price for the space in the storehouse allotted to the plaintiff was fixed in reference to these circumstances. The parties could not have understood that the defendant was to take no care of the goods. The very nature of the contract and the relation between the parties imposed upon the defendant the obligation of ordinary care and prudence in keeping the goods. It is like the case of one who hires a box contained in the safe of a safe deposit company. He may keep the key, but the company, without special contract to that effect, would be held to at least ordinary care in keeping the deposit, and the duty of such care would arise from the nature of the business it was carrying on, and the obligation to discharge it would be implied from the relation between the parties."

Having decided that the relation existing between the lessor and lessee of a safety deposit box, as in the case before us, is that of bailor and bailee, and that the duty owing by the bailee to the bailor in such cases is that he shall in guarding and safekeeping the contents of the lessee's box exercise ordinary care and diligence, the inquiry will be made as to the burden of proof; that is, upon whom such burden rests.

. In Van Zile on Bailments, sec. 206, it is said: "The question as to the burden of proof seems to be settled in the

opinion of the court in the case of *Claflin* v. *Meyer,* 75 N. Y. 260, which held that where there is a failure to account for the property or its injury, and a demand and an unexplained refusal to deliver is proven, a *prima facie* case of negligence is made out; but when the loss or injury is accounted for as having been occasioned by some of the causes which excuse the bailee, then the defense is complete, unless the plaintiff further shows that the bailee, by exercising ordinary diligence, might have avoided the loss or injury; that the burden of proving negligence never shifts from the plaintiff. In that case the goods were lost by a burglary. The court says: 'Upon its appearing that the goods were lost by a burglary committed upon the defendants' warehouse, it was for the plaintiffs to establish affirmatively that such burglary was occasioned or was not prevented by reason of some negligence or omission of due care on the part of the warehouseman.

"The cases agree that where a bailee of goods, although liable to their owner for their loss only in case of negligence, fails, nevertheless, upon their being demanded, to deliver them or account for such non-delivery, or, to use the language of SUTHERLAND, J., in *Schmidt* v. *Blood,* where there is a total default in delivering or accounting for the goods, this is to be treated as *prima facie* evidence of negligence."

In this case the appellee testified that she placed the bonds in the safe deposit box rented by her from the appellant. The box was then placed by its employee in the locker which was in possession of the appellant, and the door of the locker locked; that the door when locked could not thereafter be unlocked without the use of the master key, which was likewise in the possession of the appellant; that when the box was next opened by the appellee some weeks thereafter, the bonds were gone and the appellant was unable to account for their loss, and the appellant has failed to deliver to the appellee said bonds or account for their non-delivery.

Under these facts and circumstances the appellant's failure to deliver and account for the bonds should be treated as *prima facie* evidence of the negligence of the defendant in not exercising ordinary or reasonable care and diligence in the safe keeping of the contents of the box. This being so, we cannot see that the court was in error in refusing to grant defendant's prayer asking that the case be withdrawn from the consideration of the jury for the want of legally sufficient evidence.

The plaintiff's first prayer properly states the law applicable to this case, or at least, we discover no serious objection which can be made thereto. It also correctly states what is meant by reasonable care as therein used.

The second prayer, we think, correctly states the law upon the burden of proof and the inference to be drawn by the jury from the failure of the defendant to comply with the demand made upon it by the plaintiff for the return of the bonds, and we find no error in the rulings of the court upon the special exceptions filed to this prayer, as we think there was evidence legally sufficient to show that demand was made upon the defendant by the plaintiff for the return of the bonds, and also that there was evidence legally sufficient to show that the bonds were abstracted from the box.

Nor do we discover any error in the court's ruling in granting plaintiff's third prayer.

Therefore, as we find no error in the court's rulings below, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*