(No. 16132.—Judgment affirmed.)

THE CHICAGO GERMAN HOD CARRIERS UNION AND BENEV-
OLENT SOCIETY, Defendant in Error, *vs.* THE SECURITY
TRUST AND DEPOSIT COMPANY, Plaintiff in Error.

*Opinion filed December 16, 1924—Rehearing denied Feb. 4, 1925.*

1. BAILMENTS—*what is sufficient proof of ownership of prop-
erty by corporation.* In a suit by an incorporated benefit society
to recover the value of the contents of a safety deposit box after
theft of the property from the bailee, testimony of the directors of
the corporation that they placed the money of the society in the
box upon its delivery to them by the treasurer is sufficient proof of
ownership by the corporation, notwithstanding the fact that said
directors, in testifying, call themselves trustees, which title they
bore prior to the incorporation of the society.

2. SAME—*what is sufficient proof of amount stolen from safety
deposit box.* In an action against a bailee to recover the contents
of a safety deposit box placed in the bailee's vault for safe keep-
ing by the managers of a benefit society, although said officers
testify they did not count the contents of the box the last time
they put in a deposit of cash prior to the time the box was robbed,
proof that the contents had been counted more than once previous
to that time, and that the witnesses remembered, by aid of their
books of account and method of doing business, about how much
was in the box, is sufficient proof of the plaintiff's claim as to the
contents of the box to warrant submitting the question to the jury.

3. SAME—*what care is required of safety deposit company.* A
company which keeps a safety deposit vault for the use of cus-
tomers for hire is bound to use ordinary care to safely keep the
deposits placed therein, and when loss occurs it must prove that
it exercised such care.

4. SAME—*when Supreme Court must affirm judgment against
bailee.* In a suit against a safety vault company to recover the
contents stolen from a safety box, where the plaintiff makes proof
of the loss of the contents and of the amount claimed, it is a ques-
tion for the jury whether the defendant exercised the degree of
care required by the law, and that question having been determined
by the verdict and judgment of the trial court in favor of the
plaintiff, which judgment is approved by the Appellate Court, the
Supreme Court cannot reverse the judgment on the evidence as
to the exercise of due care.

WRIT OF ERROR to the First Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. WALTER BREWER, Judge, presiding.

WILSON & MAY, WARREN B. WILSON, and W. W. WITTY, (ALVIN E. STEIN, of counsel,) for plaintiff in error.

JOHN D. FARRELL, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This action of assumpsit was brought by defendant in error against plaintiff in error to recover the value of money and securities of plaintiff deposited in a safety deposit box of defendant, the keeper of a safety deposit vault. It was a night vault, operated all night for the transaction of business. August 28, 1921, robbers broke boxes open, including the box rented by plaintiff, and took away the contents. Upon a trial plaintiff recovered a verdict and judgment for $34,500, which was affirmed by the Appellate Court. The record is brought to this court for review upon defendant's petition for *certiorari.* The parties will be referred to as plaintiff and defendant.

Defendant urges three grounds for reversal of the judgment: (1) Because the contents of the box were not shown to be plaintiff's property; (2) it was not satisfactorily proved what the box contained; (3) there was no proof of defendant's negligence. The greater portion of the argument is devoted to the proposition that it was not proved the property in the box belonged to plaintiff.

The original declaration was filed in the name of the "German Hod Carriers Union and Benevolent Society, August Pioch, Edward Richter, Charles Engel, Gustav Goedeke, the trustees of said society." By leave of court the declaration was amended by interlining the word "Chicago" before the words "German Hod Carriers Union and Benevo-

lent Society," and the words "a corporation" were written after the word "society," and the names of the persons mentioned as plaintiffs were erased, and also the words "trustees of said society." The erasure was made by drawing a line through the words, so that as amended the plaintiff's name in the declaration was, "The Chicago German Hod Carriers Union and Benevolent Society, a corporation."

The Hod Carriers Union was organized in 1885 to provide sick benefits for members but was not incorporated and its business affairs were managed by persons styled "trustees." In 1890 it was incorporated under the name, "The Chicago German Hod Carriers Union and Benevolent Society," and the articles of incorporation provided for its management by three directors, to be elected annually. The safety deposit box was rented originally by the society before its incorporation and has been continued ever since it was incorporated. The officers and members of the corporation were hod carriers, and appear not to have comprehended the difference between a trustee of an unincorporated society and a director of a corporation. Charles Engel testified he had been a hod carrier forty years, and was a member of and had been a trustee of plaintiff twenty-seven years; that the trustees had charge of the money of the organization and kept it in a safety deposit box. Gustav Goedeke testified he had been a member of the Hod Carriers Union and Benevolent Society about thirty-six years, and testified as to who was president and secretary; that he had been a trustee twenty-five years, during which period the organization kept its money in a safety deposit box. August Pioch testified that he was a member and had been treasurer of the society for ten years; that he delivered the money to the trustees; that it was kept in a box of the Security Trust and Deposit Company, the rental of which was paid by the witness; that to his personal knowledge the society had had the box over twenty-six years. There was no proof of any formal transfer of the assets of the

society as it existed prior to its incorporation in 1890, to the corporation. It seems clear, however, that the transfer was made by the old society going out of existence and the corporation taking over its assets and business. The persons who managed it styled themselves "trustees" instead of "directors," as would have been proper, but there can be no question from the proof that the box and its contents became the property of plaintiff when the change from an unorganized society to a corporation occurred. The mere fact that the managers called themselves "trustees" instead of "directors" we think of no material significance. The directors and members of the corporation were workingmen, and the fact that they did not keep a perfect record of their acts and use the proper legal terms cannot affect the title of the corporation to the box and its contents. To defeat the right of recovery on that ground would be a technical refinement which neither law nor sound reason could justify.

Upon the question of the contents of the box at the time of the robbery, Carl Engel testified he had been a hod carrier forty years and a trustee of the Hod Carriers Union and Benevolent Society twenty-seven years. The trustees had charge of the money and property of the union and kept it in a safety deposit box. He testified he, the other two trustees and the treasurer on August 23, 1921, were admitted to the vault, opened the box, took it out and carried it down ten or twelve steps to the basement. The witness had the key given to a customer. At that time they put $3000 cash in the box. He testified there was before that deposit was made, $6500 cash in the box, $24,000 in liberty bonds and $1000 in war savings stamps. He admitted they did not count the cash in the box at the time the $3000 was placed in it or examine the bonds but testified he had counted the cash and examined the bonds before that time. At the time the $3000 was deposited he saw the money and bonds in the box. He had opened the box frequently before August 23 and examined its contents, and that all the

papers and money appeared to be in the box the night of August 23. The bonds had been in the box since April, 1917, and were taken out to cut the coupons off. The witness had the only customer's key to the box. An official of the vault company went with the customer every time he visited the box, as the customer's key would not open it without the vault company's key. Witness testified he never visited the box alone. He was always accompanied by the other trustees. One trustee going alone could not get in.

Gustav Goedeke testified he had been a trustee of the Hod Carriers Union twenty-five years and had visited the vault frequently with the treasurer and the other two trustees. No one of them could get into it alone. August 23, 1921, the treasurer, witness and the other two trustees visited the box and deposited in it $3000. He said when they took the box out he saw the money, liberty bonds and war stamps; that the cash in the box before that night was $6500, and $24,000 in liberty bonds and $1000 in war savings stamps; that the bonds were in thousand-dollar denominations; that trustee Engel locked the box after the $3000 was placed in it. Witness testified they saw what was in the box that night but did not count it. The bonds would be removed for the purpose of cutting the coupons off, and they were then counted. The organization kept a book which showed what was deposited in the box. The witness testified no one could get in the vault but the three trustees and the treasurer. The money in the box was counted about three weeks before August 23, 1921. Witness' memory of the amount of money and bonds kept in the box depended largely on what the books showed.

August Pioch testified he was a hod carrier and had been treasurer of the organization for ten years. It was his duty to turn the money received over to the trustees. He had nothing to do with renting the safety deposit box except to pay the rent for it. Witness visited the box with the trustees in August, 1921, and he delivered to the trus-

tees $3000. Witness handed the money to the trustees, Engel, Goedeke and Richter. They counted it and put the $3000 in the box. That made all together $9500 in cash, in one-hundred-dollar bills, fifty-dollar bills, twenty-dollar bills, ten-dollar bills and five-dollar bills. Witness said he looked in the box and there was $24,000 in liberty bonds, also war savings stamps. The trustees did not count the bonds, but he picked them up and saw they were there. The twenty-four bonds appeared to be there. He had seen them twice before that time. He never counted the money or bonds but had seen them counted. Richter, the other trustee, is dead.

It cannot be denied that the testimony tended to show that there was in the box when it was broken open and robbed, $9500 cash, $24,000 in liberty bonds and $1000 in war savings stamps. It is true the officers of plaintiff did not count the money and securities on August 23, when they put the $3000 cash in the box, but according to the proof they had been counted more than once previous to that time, and from the method of doing business by plaintiff and the testimony of the witnesses we think it reasonably certain that the cash and securities claimed by plaintiff were in the box at the time. At all events, it cannot be said there was no proof to sustain plaintiff's claim as to the contents of the box and it was a proper question for the trial court to submit to the jury. The judgment of the superior court having been affirmed by the Appellate Court, we can not weigh the evidence and reverse the judgment because contrary to a preponderance of the testimony. Defendant made no proof to dispute the testimony of plaintiff as to what the contents of the box were.

It is also contended the proof does not show the loss of the contents of the safety deposit box was due to any negligence of defendant. The evidence shows that on the night of the robbery there were only two persons in charge of the vault. One of them was in charge of the desk, lo-

315—14

cated separate and apart from the vault where valuables were kept. It was his duty to see that only persons entitled to admission to the vault should be admitted. One man was in the vault where the valuables were. It was his duty to admit anyone with the proper pass and assist him in getting access to the box. On the night of August 28 four strangers, who were not required to identify themselves, entered and rented a box from the man at the desk and paid the rent. These four men approached the door of the vault, handed the slip given them by the desk man to Jonas, who was the guard within the vault, and he admitted them. He started to take them back to where the box was located, and after they were out of sight from anyone in front the four men seized, bound and tied him to an iron pipe. They drew their guns and intimidated him from making any outcry. No one else was in the vault but the guard and the four men. The robbers, after securing Jonas, rifled the boxes in the vault at will. Jonas had been a guard about five months. Before that time he had been towerman for a railroad company. Weber, the man at the desk, had worked for defendant about six months. Before that time he had been a bricklayer.

The law applicable is that relating to bailments. Defendant was bound to use ordinary care to safely keep the deposits. "The duty of exercising such care arises from the nature of the business which a safety deposit company carries on, and the obligation to discharge the duty is implied from the relation of the parties. As bailee the defendant was bound to exercise such care and diligence in the preservation of the property entrusted to it as every prudent man takes of his own goods of like character. * * * Under such conditions we see no reason to depart from the ordinary rule that where a bailee receives property and fails to return it, the presumption arises that the loss was due to his negligence, and the law imposes on him the burden of showing that he exercised the degree of care required by the

nature of the bailment." (*Schaefer* v. *Washington Safety Deposit Co.* 281 Ill. 43; *Mayer* v. *Brensinger,* 180 id. 110.) It was a fair question for the jury whether defendant exercised the degree of care required by the law, and that question having been determined by the verdict and judgment of the trial court and having been approved by the Appellate Court, this court cannot reverse the judgment on that ground.

No error has been pointed out which would justify a reversal of the judgment, and it is affirmed.

*Judgment affirmed.*