BLAIR *v.* RILEY, EXR.

BLAIR *v.* ASHCRAFT.

BLAIR *v.* HAAS.

BLAIR *v.* FAIRALL.

CHANEY *v.* BLAIR.

RILEY, EXR., *v.* BLAIR.

514

(Decided January 6, 1930.)

*Mr. Gilbert Bettman,* attorney general, *Mr. L. F. Laylin* and *Mr. J. A. Godown,* for E. H. Blair, etc.

*Mr. A. J. Riley* and *Messrs. Mooney, Bibbee & Edmonds,* for Ray Ashcraft, A. J. Riley, Executor, and Joseph Chaney.

*Messrs. Crabbe, Johnson, Crabbe & Williams,* for Maria F. Haas.

*Messrs. Mooney, Bibbee & Edmonds,* for Alva J. Fairall.

HORNBECK, J.   These proceedings in error are prosecuted by the plaintiff in error E. H. Blair, and by defendants in error Fairall and Haas, from judgments of the common pleas court. A jury was waived and the causes submitted to the trial judge.   We refer to the parties as they appeared below.

The plaintiffs were holders of safety deposit boxes in the People's Bank of Frazeysburg, Ohio, of which institution J. L. Browning was, at the time the causes of action arose, and for many years prior thereto, cashier.   The parties, without exception, base their causes of action upon contract. The proof, in the main, raises the inference of implied con-

tracts, but in the instance of the Fairall case an express contract is established by the testimony.

J. L. Browning, cashier of the bank, through whom the parties had dealt with the bank, came to his death by violence in the rear room of the bank on the 14th day of December, 1926, under circumstances which definitely pointed to suicide. It appears from the evidence that he had converted securities of customers of the bank to his own use in several transactions, and that the only probable or immediate cause of his act was the imminence of discovery of another instance wherein he had sold, in the name of the bank, Liberty bonds of the value of $2,000, possession of which he had secured by some trick.

The parties plaintiff whose cases have come to this court on error all offered testimony tending to establish that valuable securities which they had theretofore deposited in the safety deposit boxes which they held under contract of rental with the bank had disappeared during the term of the contract and were not found upon inspection of the boxes after the bank had gone into the hands of a receiver. In practically all instances, except those attendant on the Fairall transactions, access to the boxes of the plaintiffs was made possible by the intrusting of the box and contents, on occasions, to Browning, in the presence of the plaintiffs, or the intrusting to him by them of the keys, which were required to be used in conjunction with the master key held by the bank, to open the boxes.

The record fairly discloses that the People's Bank of Frazeysburg was a typical small-town bank, wherein over a period of many years the directors had by common consent permitted Browning in his

capacity as cashier to have full and complete charge of the business of the institution, with the widest possible powers; the directors reserving to themselves only the right to pass upon applications for loans. It was the practice for Browning to assist customers of the bank in their business transactions, some of which were in a manner detached from immediate connection with the bank, but all had such relation to it as might produce more business for the institution.

The court very properly held that the circumstances under which the cashier so acted were such as to justify the conclusion that in practically all instances presented he was acting for and on behalf of the bank. He assisted holders of safety deposit boxes in clipping coupons from their bonds, in reinvesting the funds when securities matured and were paid, and on several occasions he was permitted in the absence of the holders of the boxes to go to them and clip the coupons and credit the interest to the proper accounts. In one instance, at least, the boxholder left his key at all times at the bank.

In the Maria F. Haas case, Browning had possession of her key on two occasions; once for a short while and again for a considerable period of time. In the one instance the key was secured under circumstances which, in the light of subsequent developments, indicated subterfuge and sharp dealing.

There is some testimony tending to show that Browning had access to some of the boxes by means independent of keys put into his possession by boxholders.

Under this state of facts, the trial court held that the relationship existing between the boxholders and

the bank was that of bailment; that when the plaintiff had shown the rental of the box from the bank, the placing of securities therein, and the failure of the bank to return them on demand, a *prima facie* case was made against the bank; that the defendant could not assert its want of knowledge of the honesty of its officer, the cashier, as a defense against its liability as bailee.

The only effect of the testimony adduced by the defendant was to tend to weaken the case which the plaintiffs were required to make to establish a *prima facie* right to recovery. No explanation is forthcoming, and none suggested defensively, which accounts for the disappearance of the bonds and other securities, once it is established that the plaintiffs had them in their boxes as claimed.

The plaintiffs having access to their boxes, if desired, at times and under circumstances when the employees of the bank could not observe what was done with the securities, it is incumbent on the plaintiffs to meet the demands of strict proof, though only a preponderance of the evidence, of the fact that the securities were in fact in the boxes, and that they had disappeared without their knowledge or consent. This being established, it is no hardship, nor is it unfair, to require the bank to give some reasonable explanation of the loss which will meet the *prima facie* case made against it.

We are of opinion that the court was sound in its conclusion as to the law of this case. The plaintiffs' actions were grounded upon contract.

Judge Kinkead, in the case of *Heckler* v. *Columbus Transfer Co.,* 17 N. P. (N. S.), 294, 25 O. D., N. P., 171, effectively discusses the distinction between

actions such as we have here under consideration, based upon contract, and those grounded on tort, and states the rule concerning a *prima facie* case to be as adopted by the trial court. See, also, *Cleveland-Akron Bus Co.* v. *Rogoff,* 25 Ohio App., 538, 159 N. E., 374; *Morgan* v. *Citizens Bank of Spring Hope,* 190 N. C., 209, 129 S. E., 585, 42 A. L. R., 1299, and annotations.

We do not hold that the law of this case would apply in all instances in a contract between a bank and safety deposit box renters. The relation between the boxholders and the bank would, in all probability, not be paralleled in an institution of sufficient size to maintain a separate safety box department. A bank, no doubt, by specific contract, could limit its liability within reasonable bounds and put upon the boxholder the obligation of preventing his key coming into the possession of an employee of the bank in the absence of the boxholder. But in the instant case all that the cashier did was within the apparent scope of his authority, so held out and acquiesced in by those who had control of the bank. Having permitted such a practice to grow up and to be followed by boxholders, and having at least consented to, if they did not advise, the intrusting of the added responsibility upon the cashier, the directors cannot now be heard to say that the cashier was without authority to bind them. *Rudolph Savings Bank Co.* v. *Anchor Oil & Gas Co.,* 101 Ohio St., 217, 128 N. E., 266.

We believe that *First Natl. Bank of Mansfield* v. *Zent,* 39 Ohio St., 105, has application here. In that case the course of conduct of the directors in permitting their cashier to receive special deposits for

safe-keeping, their knowledge and acquiescence in what he had done, was held to clothe him with authority to bind the bank to exercise "that degree of care which good business men would exercise in keeping property of such value."

The court said that a demand for bonds, shown to have been lost while in possession of the bank, with no other explanation of a refusal to deliver to the owner than the mere statement that the bank has no such bonds in its possession, furnishes sufficient proof of loss by such negligence as will make the bank liable therefor.

A patron of a bank, as in this case, who, by rental, holds a safety box, and who permits the cashier to have access to its contents under circumstances imputing knowledge to the bank, should be as well protected as a bailor for whom the bank receives and undertakes to hold special deposits gratuitously, as in the case of *Bank* v. *Zent, supra.*

We would not depend upon the syllabus in *National Liberty Ins. Co. of America* v. *Sturtevant-Jones Co.,* 116 Ohio St., 299, 156 N. E., 446, 52 A. L. R., 705, because of the marked difference in the facts upon which the law was thus stated and those existing in the case before us.

The relation of the boxholder and the bank is that of special bailment. The bank cannot rest upon the broad principle of landlord and tenant, because its possession and control of the box is more complete than that of landlord over the property which he leases. On the other hand, there may be limitations upon the general rules attending the obligation of the bailee in safety box cases, inasmuch as the possession and control of the property is not as com-

plete in the bailee as it is in certain types of bailments, for instance, express, storage or hotel. The distinction is well set forth in *National Safe Deposit Co. v. Stead, Atty. Gen.,* 250 Ill., 584, 95 N. E., 973, 977, Ann. Cas., 1912B, 430, where the court says: "We think it clear that where a safety deposit company leases a safety deposit box or safe, and the lessee takes possession of the box or safe and places therein his securities or other valuables, the relation of bailee and bailor is created between the parties to the transaction as to such securities or other valuables, and that the fact that the safety deposit company does not know, and that it is not expected it shall know, the character or description of the property which is deposited in such safety deposit box or safe does not change that relation, any more than the relation of a bailee who should receive for safekeeping a trunk from a bailor would be changed by reason of the fact that the trunk was locked and the key retained by the bailor, although the obligation resting upon the bailee with reference to the care he should bestow upon the property in the trunk might depend upon his knowledge of the contents of the trunk. Obviously, the bailee would be in possession of the trunk and its contents, and no amount of argument would demonstrate that while the trunk was in possession of the bailee its contents were in the possession of the bailor, solely by reason of the fact that the bailor of the trunk retained the key and the bailee did not have access to the trunk. We are of the opinion that the relation of bailee and bailor exists between the appellant and its lessees, and that the deposit of the securities and valuables by its lessees in rented safety deposit boxes or safes

is a bailment, and that the law applicable to bailments, generally, applies to such transaction and to such property.''

Nor can the bank assert that through its directors it used due care in the selection of the cashier, that they were not put on notice as to his misconduct, and that therefore they should not be held responsible for his breach of trust with the patrons of the bank. In *Citizens' Savings Bank* v. *Blakesley,* 42 Ohio St., 645, in the second proposition of the syllabus, it is held: ''Where a transaction with an incorporated banking association properly pertains to the business of such an association, neither the abuse or disregard of his authority by its managing officer or agent, nor his fraud or bad faith will be permitted to be shown in defense of such bank in an action against it by an innocent party, growing out of such transaction.''

Proceeding now to the specific cases, we are of opinion that there is no error in the judgment of the trial court in the Fairall, Ashcraft, Drake, Littler and Chaney cases. It should be borne in mind that we are passing upon these cases in an error proceeding; that the conclusion of the trial court will not be disturbed unless manifestly against the weight of the evidence; and that, if upon any reasonable interpretation of the evidence as adduced the court could have properly reached the conclusion represented by the judgment, it should not be disturbed here.

There is support for the decision below in all instances. Although, had we heard the case, we might have reached different conclusions in some respects, we cannot say that any prejudicial error has inter-

vened against any of the parties heretofore mentioned.

We are, however, constrained to differ with the trial court on the Haas claim. Mrs. Haas directed Browning, as cashier of the bank, to convert $1,500 of the $2,000 check with which she intrusted him into Liberty bonds. What relation he sustained to her in securing the check is immaterial. In its disposition, he was acting as cashier. Whether or not he followed instructions the record does not disclose, but, inasmuch as the agent of the bank was directed to do that which was clearly within the scope of his authority, the bank is estopped to deny that it was done. When the Haas box was opened after the death of Browning it was discovered that in lieu of Liberty bonds, which Mrs. Haas admittedly had owned and had kept in the box, were Miller bonds in like sums. Her conduct at the time indicated clearly that she was surprised at finding the substitution of bonds made. She testifies positively that at no time had she authorized an exchange of Liberty bonds for Miller bonds, nor had she ever authorized the purchase of Miller bonds.

The court found for her in the amount of bonds which it was admitted she had owned, but against her as to the $1,500 worth of bonds which it is claimed she instructed Browning to purchase. It seems most convincing to us that, if any Miller bonds belonged in the Haas box, they all belonged there, and it is highly improbable that she ever authorized Browning to exchange the certainty of United States government bonds for the uncertainty of a Miller bond. It is far more probable that Browning had conceived the idea of exchanging the Miller bonds for the gov-

ernment bonds which she owned before the transaction wherein she received the $2,000 check, and that the placing of the further amount of Miller bonds, in the sum of $1,500, in the box, was merely in furtherance of a scheme theretofore conceived.

It is true that there are some circumstances, such as the notation on the deposit slips, the payment of the larger sum of interest, the reference by notation in Browning's handwriting to the farm deals, but in view of the lack of education of Mrs. Taylor (then Mrs. Haas) and the bad faith which must be attributed to Browning by reason of the record, in the light of the definite testimony of the plaintiff, we believe that judgment should have been rendered for Mrs. Haas, now Mrs. Taylor, in the full amount claimed.

We therefore affirm the judgment of the trial court in all cases and in all particulars save the Haas case, as to which we reverse, and the Haas case will be remanded for further proceedings according to law.

*Judgments accordingly.*

KUNKLE, P. J., and ALLREAD, J., concur.