## ALFORD v. UNITED STATES.

### No. 2085.

Circuit Court of Appeals, Tenth Circuit.

June 29, 1940.

Rehearing Denied July 24, 1940.

Willis R. Stark, of Oklahoma City, Okl., for appellant.

Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., for the United States.

Before PHILLIPS and BRATTON, Circuit Judges, and MURRAH, District Judge.

PHILLIPS, Circuit Judge.

Alford was charged by indictment containing two counts with violations of 12 U.S.C.A. § 588b, 50 Stat. 749.

The first count charged that Alford unlawfully took and carried away $5,000 in currency in the care, custody, control, and management of the First National Bank and Trust Company of Oklahoma City, Oklahoma. The second count charged that Alford unlawfully entered the bank with the intent on his part to commit in such bank a felony, to wit, the larceny of $5,000 of money in the care, control, custody, and management of the bank.

He was tried and found not guilty on the first count and guilty on the second count. From the judgment and sentence on the second count, he has appealed.

The evidence established these facts: Alford was a schoolmate of Howard K. Berry, who later became associated in the practice of law with O. A. Cargill, at Okla-

homa City. Alford was employed by Berry to interview witnesses and run errands. Alford was frequently in the law offices of Cargill and Berry and became acquainted with Cargill.

In 1936, Cargill rented a safety deposit box number 1791 from the First National Bank and Trust Company,[1] and continued to rent such box until July 6, 1939. On or about May 19, 1939, Cargill placed in the deposit box the sum of $5,000 in currency. On July 6, 1939, he opened the box and discovered that the currency had been taken.

Alford knew the number and location of the Cargill box. A customer desiring to rent a safety deposit box was permitted to select any available box. On December 17, 1938, Alford rented a safety deposit box in the bank, using the name of Otis Carlisle. The employee in charge of the vault offered Alford a box on the north side of the vault. Alford requested a box on the south side and selected box number 1797.

The safety deposit vault of the bank was located in the basement of the banking house. It was entered by means of a stairway. The safety deposit office, in which the records were kept, was located at the left of the lower end of the stairway. A customer desiring access to his deposit box went down the stairway and came to a desk where entrance slip blanks were kept. He was required to sign an entrance slip and write thereon the number of his box. The slip was then checked with a signature file. If the signature appeared to be genuine, and the number correct, the employee in charge of the signature file, initialed the slip, recorded the date, hour, and minute thereon, and handed it back to the customer. This slip enabled the customer to pass by the guard at the gate into the vault. The customer would then present his key to the custodian and with the customer's key and the group key the custodian would open the box.

Cargill kept the key to his safety deposit box on a key ring with other keys, including a key to the washroom. Alford borrowed Cargill's keys from time to time to go to the washroom. Cargill left his keys at his office on two occasions. Fifty-eight cancelled checks were taken from his office desk, access having been gained thereto by the use of his keys. A list of the missing checks was found in Alford's effects after his arrest. Alford was seen on one occasion, prior to July 1, 1939, going through Cargill's desk after the office had closed for the day.

In the records of the bank were found three safety deposit entrance slips signed by Alford, using the name of Otis Carlisle, dated January 16, January 18, and January 27, 1939, respectively. The number originally written on the slips was 1791. It was thereafter changed to 1797. A fair inference is that Alford wrote the number 1791 on the slip and that it was corrected to 1797 by the signature clerk. When Cargill missed the currency from his box on July 6, 1939, the entrance slips to his box were checked and there was found in the envelope containing them one dated July 1, 1939, bearing the signature of Otis Carlisle and the box number 1791. The bank kept a daily record of customers who entered their safety deposit boxes. It showed that box number 1791 was entered by Otis Carlisle on July 1, 1939. These facts warranted the inference that Alford, by using Cargill's number, succeeded in obtaining access to his box.

On July 3, 1939, Alford rented a safety deposit box in the Tradesmens National Bank in Oklahoma City, in the name of Marcus Cox, giving a fictitious address. During the period from July 3 to July 13, Alford registered at hotels or rooming houses in Henryetta, Shawnee, Sapulpa, and Bristow, Oklahoma, and Arkansas City, Kansas, using assumed names.

About a week after the theft was discovered, Alford went to Berry's home at about ten-thirty o'clock at night. Alford said to Berry, "Howard, are you mad at me?" Berry asked him why he did it. Alford replied, "I don't know, I couldn't keep from it. I just don't know why in the world that I did do it." Berry told him Cargill had turned the matter over to the Federal Bureau of Investigation, and asked Alford what he did with the money. Alford replied, "I have got it all but about $70.00." Alford then stated that he was sorry and wanted to straighten the thing up and asked Berry if he could persuade Cargill to withdraw the charges if the money was returned. Alford inquired if Berry would act for him in returning the money. Berry agreed to take the matter up with Cargill. The next day Alford telephoned him and

---

[1] Hereinafter referred to as the bank.

Berry advised him it was impossible to stop the prosecution. Alford inquired as to what the Federal Bureau of Investigation had to do with it and Berry replied it involved a national bank.

After his arrest, Alford told an agent of the Federal Bureau of Investigation, on two separate occasions, that he had the money "stached." The agent advised him that it would be better for Alford if he returned the money. Alford said that he would be dumb to turn in the money and also go to the penitentiary.

Sec. 588b, supra, reads as follows: "(a) Whoever, by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank; or whoever shall enter or attempt to enter any bank, or any building used in whole or in part as a bank, with intent to commit in such bank or building, or part thereof, so used, any felony or larceny, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

■ Counsel for Alford contends that the language "whoever shall enter or attempt to enter any bank, * * * with intent to commit in such bank * * * any felony or larceny," is qualified by the phrases "by force and violence, or by putting in fear," and that the entry into the bank must be accompanied with force and violence or by putting in fear. We cannot agree with this construction. The section defines four separate and distinct offenses. The first is an offense in the nature of robbery. The second is an offense in the nature of burglary, entry of a bank with intent to commit a felony or larceny therein, except that forcible entry is not made an element. The third and fourth are offenses in the nature of grand and petit larceny, respectively. Force and violence or putting in fear is an element of robbery, but not of burglary or larceny.

The phrases "by force and violence, or by putting in fear" clearly only modified taking or attempting to take property or money from the person or presence of another. It would be a strained and unnatural construction to read them into the second, third, and fourth offenses defined in the statute.

■ Counsel for Alford further contends that the evidence was insufficient to support a verdict of guilty on the second count. We think the evidence fully warranted the finding that Alford entered the bank and obtained access to the safety deposit box of Cargill with intent to steal the contents of the box.

■ The relation between the bank and the renter of a safety deposit box therein is that of bailee and bailor[2] and it is the duty of the bank to exercise ordinary care and diligence in safeguarding the contents of the box.[3] We think it clear, therefore,

[2] Young v. First National Bank of Oneida, 150 Tenn. 451, 265 S.W. 681, 683, 40 A.L.R. 868; Security Storage & Trust Co. v. Martin, 144 Md. 536, 125 A. 449, 453, 454; Morgan v. Citizens' Bank of Spring Hope, 190 N.C. 209, 129 S.E. 585, 587, 42 A.L.R. 1299; Blair v. Riley, 37 Ohio App. 513; 175 N.E. 210, 212; National Safe Deposit Co. v. Stead, 250 Ill. 584, 95 N.E. 973, 977, 978, Ann.Cas. 1912B, 430; Roberts v. Stuyvesant Safe-Deposit Co., 123 N.Y. 57, 25 N.E. 294, 295, 9 L.R.A. 438, 20 Am.St.Rep. 718; Webber v. Bank of Tracy, 66 Cal.App. 29, 225 P. 41, 43; Rosendahl v. Lemhi Valley Bank, 43 Idaho 273, 251 P. 293, 294; Moon v. First National Bank of Benson, 287 Pa. 398, 135 A. 114, 115.

[3] Security Storage & Trust Co. v. Martin, supra, 144 Md. 536, 125 A. at page 454; Morgan v. Citizens' Bank of Spring Hope, supra, 190 N.C. 209, 129 S.E. at page 587, 42 A.L.R. 1299; Webber v. Bank of Tracy, supra, 66 Cal.App. 29, 225 P. at page 43; Roberts v. Stuyvesant Safe-Deposit Co., supra, 123 N.Y. 57, 25 N.E. at page 295, 9 L.R.A. 438, 20 Am.St.Rep. 718; Rosendahl v. Lemhi Valley Bank, supra, 43 Idaho 273, 251 P. at page 294; Moon v. First National

that the contents of Cargill's box was in the care of the bank.

Moreover, the statute prohibits entry of the bank with intent to commit "any felony or larceny." It is not by its terms restricted to felonies or larcenies committed against the bank.

We conclude that the evidence supports the verdict of guilty on count two.

The judgment is affirmed.

Bank of Benson, supra, 287 Pa. 398, 135 A. at page 115; Chicago German Hod Carriers' Union v. Security Trust & Deposit Co., 315 Ill. 204, 146 N.E. 135, 137; Sporsem v. First National Bank of Poulsbo, 133 Wash. 199, 233 P. 641, 642, 40 A.L.R. 854.